CALEB CLAPP AND OTHERS *vs.* THE CITY OF HARTFORD.
FIRST ECCLESIASTICAL SOCIETY OF HARTFORD *vs.* THE SAME.
WILLIAM B. ELY AND OTHERS *vs.* THE SAME.

A judge of the Superior Court, sitting as a special tribunal upon an appeal from a sewer assessment, under a provision of a city charter allowing such appeal, takes judicial notice of the provisions of the charter, whether it be regarded as a public or a private statute.

Under the charter of the city of Hartford, the whole expense of a sewer may be assessed upon parties specially benefitted.

But where on an appeal the assessment of any person is reduced, it is not necessary that the amount of the reduction should be added to the assessment of the others.

An appeal from an assessment by one of several parties assessed does not bring up the whole apportionment for revision.

The value of the land benefitted is a proper matter for consideration in assessing the owner for the expenses of a sewer.

An arbitrary rule, by which the expense of a sewer is apportioned among the adjoining owners according to the number of the front feet of their lots, without reference to other considerations, is unreasonable, and can not be sanctioned.

Where a sewer was made in front of a lot occupied by a church, it was held that the fact that the sewer would be of no present value to the lot and probably not for many years, was properly taken into consideration in assessing the property.

Where a lot has already means of drainage, either natural or artificial, this fact is to be considered in assessing it.

A vacant lot is immediately benefitted by a sewer by its increased market value, and no abatement should be made on the ground that the sewer would not be used at once.

APPEALS to a judge of the Superior Court in Hartford county, from assessments for the expense of constructing a sewer in the city of Hartford. The three cases involved the same general questions, and were argued together. By the city charter the expense of constructing sewers may be assessed upon persons " specially benefitted thereby," the assessment being made in the first instance by a committee appointed by the common council, and an appeal lying, in favor of any party aggrieved, to a judge of the Superior Court, who may appoint a committee to make a re-assessment. The committee of the common council had apportioned the entire cost of the sewer, $7,120.80, among the adjoining owners, and had assessed the appellants as follows:

Caleb Clapp, Aaron E. Clapp, and R. D. Hubbard,
    jointly, . . . . . $405 00
William B. Ely, Alfred E. Ely, Henry E. Ely, and
    R. D. Hubbard, jointly, . . . 652 00
The First Ecclesiastical Society of Hartford, 591 00

The appeal of Clapp and others alleged that their property which was assessed was not in any manner benefitted by the sewer for the reason that its previous sewer facilities were entirely ample. The appeal of Ely and others made the same allegation with regard to their property. The appeal of the Ecclesiastical Society alleged that their property which was assessed was a church and the lot on which it stands, and that in the use of it they had no occasion to use the sewer, so that the property received no benefit from it.

The judge of the Superior Court appointed William C. Crump, Esq., a committee to reassess the benefits in the three cases, who, after hearing the parties, assessed the appellants as follows:

Caleb Clapp and others, . . . . $304 00
William B. Ely and others, . . . . 160 00
First Ecclesiastical Society of Hartford, . 226 00

The committee also made the following further report in each case:

" The undersigned would also make this general report as applicable to all said cases. The authorities of said city in

assessing the benefits of the laying out and construction of said sewer, apportioned such assessment to the owners of property on the two sides of Main street along the course of said sewer, with sole reference to the supposed length of the front of each proprietorship on said street, and the differing distances of the two sides of said street from said sewer—excepting from this rule only parts of certain properties next adjoining the river. The undersigned was and is satisfied by the evidence, that the persons liable to be assessed, and actually assessed for the expense of said sewer, were and are benefitted in very different degrees; for other reasons than the differing length of their respective fronts, and the differing distances of such fronts from said sewer. No evidence was offered to show the values of the particular lands, the owners of which were assessed for said sewer, and the undersigned was obliged to make his assessment in the absence of this evidence."

The city of Hartford remonstrated against the acceptance of the report of the committee, stating the following grounds of remonstrance :

1.   That it appeared at the hearing before the committee, that the assessment for the construction of the sewer was for the sum of $7,120.80, and that the persons among whom the sum was apportioned were specially benefitted by the sewer to an amount largely in excess of that sum ; yet that if the report was accepted the assessment would be greatly reduced.

2.   That it appeared that all the appellants were benefitted by the construction of the sewer to an amount equal to the whole sum assessed upon them, and that the different appellants were severally benefitted to an amount equal to the sum apportioned to them severally, and that the acceptance of the report would reduce the sum assessed to all the appellants, and the sum apportioned to each.

3.   That it appeared by the report that the committee made his assessment in the absence of any evidence showing the value of the particular lands, the owners of which were assessed for the sewer, and which evidence in the judgment of the committee was necessary to enable him to estimate

the just proportion of the expense of the sewer which the several appellants should defray.

4. That the appellees claimed as a rule of law, that in cases of reassessment the court would not depart from the fair and reasonable rule adopted and uniformly acted on by the city council, unless the application of the rule in a particular case would work manifest and gross injustice, and would depart from such rule in no case where it did not appear that the assessment was greater than the benefit; and asked the committee so to decide; but the committee did not so decide and did not regard such rule in making his assessment.

5. That the appellees claimed that the rule adopted by the city council in the assessment of betterments for sewers; viz., to assess the owners of land fronting on the sewer in proportion to the number of front feet owned by each, was a fair and reasonable rule, and warranted by the city charter, and asked the committee so to decide; but the committee did not so decide, but held that said rule was not fair and reasonable, and was not warranted by the charter, and made his reassessment without regard to the rule.

6. That the appellees claimed that the effect of the sewer on the market value of the land on account of which the assessment was made, was the only test of benefit to the owner of such land, and that the temporary use or ownership could not be shown to lessen or increase the benefit, and asked the committee so to decide; but the committee did not so decide, but on the contrary paid regard, in making his reassessment, to the temporary use and ownership of the land belonging to the appellants.

7. That the appellees claimed that where the owner of land fronting on a sewer had built a private drain, which drain passed through land other than that on account of which the assessment for the sewer was made, and which could not be used without passing through such other land, and where no easement attached to and running with the land assessed, to drain through such other land, was proved, such owner was liable to pay the same assessment that he would be liable to pay had such drain never been built, and asked the committee

so to decide; but the committee did not so decide, but on the contrary made his reassessment less on account of the appellants having built such private drain.

8.    That the appellees claimed that the owner of land fronting on a sewer, and liable to assessment for the sewer, who had built a private drain from such land across a public highway of the city without having obtained leave of the court of common council, and which drain would not drain such land without crossing such highway, was liable to pay the same assessment that he would be liable to pay had such drain never been built, and asked the committee so to decide ; but the committee did not so decide, but on the contrary made his re-assessment less on account of the appellants having built such private drain, although there was no proof that leave had ever been asked of the court of common council to build such drain.

9.    That it appeared before the committee that the land on account of which the assessment for the sewer was made, was land fronting on both sides of Main street from Grove street to Park river, and of one hundred feet depth, and it further appeared that one of the appellants who owned such land was also owner of other and adjoining land, and the appellees claimed that such appellant was liable to pay the same assessment that he would be liable to pay if such other land belonged to a different owner, and asked the committee so to decide, but the committee did not so decide, but on the contrary made his reassessment less by reason of the ownership by such appellant of such other land.

10.    That at the hearing the appellees objected to the introduction of any evidence showing the temporary use or ownership of the land on account of which the assessment was made, and any evidence showing the construction of the private drains described in the seventh and eighth reasons of the remonstrance, and any evidence showing the ownership in any appellant of any other land than that on account of which the assessment was made, but the committee admitted all such evidence.

Upon the hearing of the remonstrance the following find-

ing was made and judgment rendered in each case, by *Loomis, J.*, to whom the appeals were taken.

" The parties this day appeared, and were heard on the remonstrance to the report of the committee, both on file.

" Evidence offered in support of the facts alleged in the first and second reasons of the remonstrance was rejected.

" In relation to the third reason of the remonstrance, I find that neither the appellees in support of the assessment nor the appellants in contesting the same before the committee, offered any evidence of the value of the particular lands assessed, and the committee had no other evidence on this point than that derived from his own personal inspection, and from the size and location of the lots and buildings thereon.

" The counsel for the appellees proposed to offer evidence to show the opinion of the committee that evidence of the value of the particular lands assessed was necessary, to which the counsel for the appellants objected, and the court rejected the same.

" The evidence in support of the first, second and third reasons of the remonstrance was not offered for the purpose of showing that the committee had acted fraudulently or corruptly, but the counsel for the appellees expressly waived any such claim.

" The allegations in the fourth reason of the remonstrance are found to be untrue.

" The allegations in the fifth, sixth, seventh, eighth, ninth and tenth reasons of the remonstrance are found to be true, with the following modifications : 1. That said Ecclesiastical Society had erected on its land, at very great expense, a building particularly and exclusively adapted, designed and used as and for a house for public religious worship, and the committee considered that a large portion of the money so invested in a house for religious worship would have to be sacrificed before the premises could be turned to any use which would make the sewer specially beneficial ; the fact being that no use whatever is at present made of the sewer by the Ecclesiastical Society. 2. That there was evidence before the committee tending to show that the private drain

mentioned in the remonstrance as laid across the highway was laid with the consent of the then street commissioner of the city of Hartford, and the appellants Ely and others, before the construction of the sewer by the city, had at their own expense built this private drain on the land assessed against them and running from said land under the public highway in the city, and thence through other lands belonging to them, which private drain they claimed rendered the city sewer of no special benefit to them. 3. That the appellants Clapp and others, before the construction of the sewer by the city, had, at their own expense, built a private drain on the land assessed against them, and running through other lands belonging to them, which private drain they claimed rendered the sewer built by the city of no special benefit to them."

The judge thereupon overruled the remonstrances, accepted the report of the committee and rendered judgment accordingly ; and the appellees brought the record before this court by a motion in error, assigning as error in addition to the points made in their remonstrance, that the record did not disclose facts sufficient to give the judge jurisdiction.

*Eaton* and *Hamersley*, for the city of Hartford, plaintiff in error.

*Hyde* and *Welles*, for Clapp and others, and for Ely and others, defendants in error.

*Stanton*, with whom was *Parsons*, for the First Ecclesiastical Society of Hartford, defendant in error.

CARPENTER, J. The questions involved are substantially the same in all these cases. The cases were argued together, and the opinion now to be given may be considered as applicable to all alike. These proceedings originated in the proceeding of the common council of the city of Hartford, in locating and constructing a sewer, under the provisions of the city charter. The charter provides for the assessment of

benefits upon those who are benefitted by the sewer, with a right of appeal to a judge of the superior court, who may by himself, or by a committee by him appointed, re-assess the benefits. Prior to the statute of 1864 the proceedings of a judge in cases of this character could not be reviewed by this court on a motion for a new trial or other proceeding in error. *Trinity College* v. *City of Hartford*, 32 Conn., 452. It was there held that, although the judge by express provision of the charter had all the powers of the Superior Court for the purpose of the proceeding before him, yet he had not all the attributes of a court, but was to be regarded as a special tribunal for the particular purpose named. But now the statute entitles the parties to have the questions of law decided by the judge reviewed by this court. It is apprehended however that the statute does not change the nature of the tribunal. The judge still remains a special tribunal for this particular purpose. His powers and duties are measured by the provisions of the charter. By a reference to that it will be seen that he has no original jurisdiction. He can only take cognizance of cases brought before him by proceedings in the nature of an appeal. He is then, for all purposes involved in the present inquiry, an appellate tribunal. The principles of law which govern appellate courts generally, will, so far as they have a bearing upon the matter now before us, be applicable to the tribunal in question.

In *Owings* v. *Hull*, 9 Peters, 607, the question was made whether the Circuit Court for the district of Maryland was bound to take judicial notice of the laws of the state of Louisiana. The court, on page 625, says, "The Circuit Courts of the United States are created by Congress, not for the purpose of administering the local law of a single state alone, but to administer the laws of all the states in the Union in cases to which they respectively apply. The judicial power conferred on the general government by the constitution, extends to many cases arising under the laws of the different states. That jurisprudence is then, in no just sense, a foreign jurisprudence, to be proved in the courts of the United States by the ordinary modes of proof by which the

laws of a foreign country are to be established, but it is to be judicially taken notice of in the same manner as the laws of the United States are taken notice of by these courts." A court of error will also take notice of the nature and extent of the jurisdiction of the inferior court whose judgment it revises. *Chitty* v. *Dendy*, 3 Adol. & El., 319. Courts will generally take notice of whatever ought to be generally known within the limits of their jurisdiction. It follows necessarily that all courts, original or appellate, will take judicial notice of the laws by which they are created, and by which their proceedings are regulated, and especially of the laws which they are to administer. In all such cases, when the memory of the judge is at fault, he has reference to such books and documents as may be at hand, and he may deem worthy of confidence. 1 Greenl. Ev., § 6.

Apply these principles to this case. It was not necessary to allege or prove before the common council that the charter of the city of Hartford constituted them a tribunal for the purpose of assessing benefits. The charter was the law of their existence, and they were bound to take judicial notice of it, and of all its provisions relating to their duties. When these cases were brought before a judge of the Superior Court by appeal, he sustained the same relation to the charter that the common council did while the proceedings were pending before them. As a special tribunal, he was called into existence by the charter, and his powers and duties as such were thereby limited and defined. It was only necessary, therefore, for the parties to allege such facts as were essential to show that the case was within the provisions of the charter. The charter itself need not be alleged or proved, as the judge was bound to take judicial notice of it. This view of the case will render it unnecessary for us to determine the question raised and elaborately discussed during the argument, whether the charter is a public or private statute, for in either case it was within the judicial knowledge of the court.

2. The second, third and fourth errors assigned, relate to the rejection of evidence by the judge on the trial of the re-

monstrance. The second and third will be considered together.

In the first reason of the remonstrance, it is alleged that the whole cost of the sewer was $7,120.80, and that the persons among whom that sum was apportioned were specially benefitted by the sewer to an amount largely in excess of that sum, and that the acceptance of the report would greatly reduce the entire assessment. In the second reason it is alleged that the persons who appealed from the assessment were specially benefitted by the laying out and construction of said sewer to an amount equal to the whole sum assessed upon them, and that the different appellants were severally benefitted to an amount equal to the sum apportioned to them severally, and that the acceptance of the report would reduce the sum assessed to all the appellants, and the sum apportioned to each.

The evidence offered in support of these allegations was rejected by the judge as irrelevant.

The claim that this evidence was admissible is based upon two assumptions :—1st. That the whole cost of laying out and constructing a sewer should in all cases be paid by the persons specially benefitted thereby. Consequently when the amount apportioned to one man is reduced, that apportioned to others must be increased ; so that, when one of several persons benefitted by a sewer appeals, the whole question of assessing and apportioning benefits upon and among all the persons interested is carried before the appellate court to be proceeded with *de novo.* 2d. That the amount assessed to each individual should be a sum equal to the full amount of the benefit received.

After a careful consideration of the provisions of the city charter we have come to the conclusion that neither of these assumptions is well founded. In respect to the first, perhaps it is reasonable and just that the city should have the power, in the first instance, to apportion the whole cost of the sewer among the persons specially benefitted thereby, and although the whole city is to some extent benefitted by a judicious system of sewerage, yet, as all parts of the city would require

sewers, perhaps the burden, so far as the public benefit is con-
cerned, might in that way be fairly and equally distributed.
And we think the language of the charter will justify the
court of common council, so far as their action is concerned,
in requiring the whole expense to be paid by the parties in-
terested. In making the apportionment, however, it may
sometimes happen that injustice will be done to one or more
individuals. The remedy is by an appeal to a judge of the
Superior Court. The obvious import of the charter is, that
the appeal carries up, not the whole apportionment, but
simply the apportionment to the appellant. The appeal is
allowed "to any person aggrieved," and notice must be
served upon the city clerk. The city, and not the other per-
sons benefitted, is the adverse party. If the legislature had
intended that there should be a general re-apportionment
upon the appeal, it is fair to presume that provision would
have been made for notifying the others interested, as they
would, in that event, seem to have a greater interest in the
question than the city. Indeed, the city would hardly be in-
terested at all, as it would be immaterial to it who paid the
assessment, or in what proportion it was paid. The fact that
the charter makes the city the only appellee, is sufficient evi-
dence of an intent that the appeal should not disturb the as-
sessment upon others, and that the appellate court should be
limited to re-assessing benefits to the appellant. In this view
of the case it is apparent that the charter must have con-
templated a reduction of the assessment upon the appellant,
and a consequent reduction of the whole sum assessed;
otherwise the appeal could be of no benefit to the party ag-
grieved. It follows then, necessarily, that evidence to prove
such reduction in these cases would have been immaterial
and irrelevant. It is true that this view of the question
renders it possible that some portion of the expense of every
sewer may be borne by the city; but it is apprehended that
the burden thus sustained will generally be light. However
this may be, a fair and reasonable interpretation of the char-
ter clearly points to that result; and as the sewer is beneficial

to the city, independent of its special value to individuals, we cannot say on the whole that it is unjust or inequitable.

We think the other ground assumed is equally untenable. The whole amount of benefits to individuals may be largely in excess of the whole cost of the sewer. In such a case it is not contended that the whole amount should be paid. It was doubtless competent for the city to prove, on the trial before the committee, that the benefit was equal to or greater than the sum assessed ; and it does not appear but what the party there had the full benefit of that fact. But we do not see how that fact, standing alone, proves or tends to prove any irregularity or misconduct on the part of the committee. We cannot therefore perceive its relevancy, either by itself or in connection with any other fact alleged, upon the trial of the remonstrance. We think therefore that the judge did not err in rejecting this evidence.

3. It seems that there was no evidence offered before the committee to show the values of the particular lands, the owners of which were assessed for this sewer. It is alleged in the third reason of the remonstrance, that such evidence, in the judgment of the committee, was necessary in order to estimate the just proportion of the expense of the sewer which these appellants should severally pay. On the trial of the remonstrance the judge rejected the evidence offered in support of this allegation, and that is assigned as the fourth error. Had the appellees offered evidence to prove the value of the land on the trial before the committee, and such evidence had been rejected, there would have been just cause for complaint. But no such evidence was offered. Either party, deeming it material, might have offered it. Neither party, then, is in a condition to complain of its absence.

4. It is next objected that the judge erred in disregarding the rule of assessment adopted by the common council ; to wit, to assess the owners of lands fronting on the sewer in proportion to the number of front feet owned by each. When or how this rule was adopted does not distinctly appear. It is not to be found in the charter, and our attention has not been called to any by-law, or city ordinance, containing any

such rule. From the language of the remonstrance we are led to believe that the rule is nothing more than a practice that has grown up in this class of cases. If so, perhaps that of itself would be a sufficient answer to this whole claim. We are not prepared to say that a simple rule of practice, even though uniformly acted on, is to have the force of law, so that a departure from it will alone vitiate the proceedings. If by departing from the rule and adopting another injustice should be done, we should doubtless set aside the proceedings, not because the rule had been disregarded, but because injustice had been done. So on the other hand, if substantial justice has been done, and the provisions of the charter virtually complied with, we ought not to disturb the judgment, notwithstanding the court adopted a rule differing in some respects from the rule adopted by the common council.

But if the rule had been embodied in a by-law of the city, it ought not to receive the sanction of this court, unless it appears to be a fair and reasonable rule. *City of Boston* v. *Shaw*, 1 Met., 130. Waiving then the question as to the mode of its adoption, let us examine the rule and see whether it is reasonable in its operation. It disregards entirely the quantity of land affected. Two lots, with equal fronts, the one containing double the number of square feet contained in the other, are benefitted in different degrees. The rule taxes them alike. This is not in proportion to the benefit received. The proceeding under this charter is analagous to the proceeding prescribed by statute for draining meadow and marshy lands, and should be governed by the same principles. The statute referred to expressly provides that the assessment shall be made " *according to their quantity of land*, and the benefits which they receive, in such proportion as the commissioners shall judge to be equal and just." Gen. Statutes, tit. 54, secs. 2, 11. We agree that this statute is not conclusive ; but is evidence that the legislature deemed it reasonable that, in the cases to which it applies, the quantity of land should be considered in making the assessment. We think it equally reasonable that the quantity should be considered in the cases now under consideration.

The rule also ignores the values of the lands benefitted. Two different lots, with the same length of front, may differ greatly in value, owing to a difference in location, or other causes, and hence be benefitted in different degrees. It is certainly reasonable that the one receiving the greater benefit should pay the greater tax. Yet an arbitrary rule, like the one contended for, taxes both alike. In the city of Boston an ordinance provides that sewer taxes shall be assessed according to the value of the land, without reference to the buildings thereon. The Supreme Court of Massachusetts held that the ordinance was valid, and the rule prescribed a reasonable and just one. *Downer* v. *City of Boston*, 7 Cush., 277. We cannot sanction a rule which excludes the value of the property in estimating the tax to be assessed.

This rule also excludes from consideration any and all peculiar circumstances which modify the amount of benefit received. One man owns a piece of land extending from one street to another. A sewer in one street sufficiently drains his whole premises. Another sewer is constructed in the other street, from which he derives little or no benefit. This rule imposes the same burden upon him that it does upon an adjoining proprietor to whom the new sewer is indispensable.

The charter is silent as to any such rule. It provides that the " court may assess a proportional sum of the expense of laying out, altering and making such public works, upon any person or persons specially benefitted thereby, and estimate the just proportion of such expense which such person should defray." It evidently contemplates that the amount assessed shall be in proportion to the benefit received. The committee has expressly found that " the persons liable to be assessed, and actually assessed for the expense of the sewer, were and are benefitted in very different degrees, for other reasons than the differing lengths of their respective fronts, and the differing distances of such fronts from said sewer." If therefore the committee had been governed solely by the length of the respective fronts, and the distances of such fronts from the sewer, the assessment would not have been in proportion to the benefit received. It seems to us quite clear that all the

circumstances, tending either to enhance or diminish the benefit received, must be taken into consideration.

Again, the charter gives the party aggrieved the right of appeal. This would seem to be idle if the amount assessed to each individual must depend solely upon the relative length of front owned by him. In that case, estimating the amount of tax to be paid would be merely a mathematical computation, which could be performed by a mere school boy. The very fact that an appeal is given, seems to imply that the act appealed from involves the exercise of judgment and discretion.

5. It is further claimed that the judge erred in not paying sole regard to the effect of the sewer upon the market value of the land assessed, without reference to the present use of the property, or the present means and facilities for drainage through other channels. In one case, that of the First Ecclsiastical Society, the land assessed is at present occupied as a building site for a congregational church, with every prospect that it will continue to be so occupied for an indefinite time to come. The appellants claim that such use requires no drainage, in consequence of which, for the present at least, the sewer can be of no benefit to them. This claim was sustained by the judge, and the property assessed accordingly. In this we see nothing objectionable. We have already seen that the assessment should be in proportion to the benefit received. The present use of the property, which seems to be of a permanent character, forbids the idea of any immediate benefit. Before the property will need the advantages of a sewer, the sewer itself may be rendered worthless by lapse of time. If that could be known with certainty, the assessment should be little or nothing. On the other hand, the church edifice may be sold, and the property converted to other uses, within a short time. In such a case there should be little or no abatement. It is to be presumed that all such considerations were properly weighed by the committee, and allowed to have such weight as they were justly entitled to.

In the case of Ely and others it appears that the appellants had previously constructed a private drain running under the

highway, in consequence of which the public sewer, as they claim, is of no special benefit to them. The judge so far sustained this claim as to reduce somewhat the amount assessed by reason of the private drain. We think he was justified in so doing. If any lot fronting on this sewer had been so situated as to be as easily and perfectly drained without the sewer as with it, there could have been no justice or propriety in taxing it; and for the simple reason that it received no benefit. The proprietor of such a lot can have no stronger claim for exemption than one who in good faith has been at the expense of furnishing himself with such facilities. The appellee objects that this drain, inasmuch as it passes under the highway, is a nuisance, and liable to be abated at any time. The record does not show it to be a nuisance. There was evidence tending to prove that it was constructed by the consent of the street commissioners. But however this may be, in the absence of proof to the contrary the presumption is that it was lawfully constructed. A license will, if necessary, be presumed.

In the case of Clapp and others, the appellants had constructed their drain through other lands belonging to them. Much that has already been said applies with more or less force to this case, and it is unnecessary to repeat it here. The appellees object, however, that the other land may be sold, and the right of drainage across it may thereby be lost. This may or may not be so. The probabilities, one way or the other, were doubtless considered by the committee. Whether the assessment should be reduced much or little was a question for him. The manner in which he exercised his judgment in this respect is not complained of. That it was his duty to take this circumstance into consideration seems to us unquestionable.

The property taxed in these cases is to be distinguished from vacant lots. Here the lots are appropriated to some practical, substantial use, more or less permanent in its character; while vacant lots are generally unoccupied. The advantage accruing to these lots from the public sewer is

either postponed indefinitely or materially diminished by the peculiar circumstances of each case. The advantage accruing to a vacant lot is direct and immediate. The full benefit of the sewer is at once realized in the increased value of the lot. In such cases there should be no abatement of the sum assessed in consequence of the non-use of the land.

We see nothing erroneous in the proceedings complained of.

In this opinion the other judges concurred.