In the Matter of the Application of DENNIS P. CREEDON, Respondent, for the Examination of Certain Voting Machines, etc. THOMAS F. WALSH and Another, Appellants.*

Fourth Department, December 28, 1933.

*Arthur J. Foley*, for Dennis P. Creedon.

*Warnick J. Kernan* and *Ezra Hanagan*, for Thomas F. Walsh.

*Leo O. Coupe*, for Joseph L. Matt.

CROSBY, J. A proceeding was commenced under section 333 of the Election Law to procure the examination of voting machines used in the last general election in the city of Utica, and the preservation of ballots in view of a prospective contest. In three machines it was discovered that there was an improper "hook-up" in respect to the candidates for assessor. There were six candidates for this office, two to be elected. There were two Socialists who need not be considered here as the contest does not affect them. There were two Republican candidates — Creedon and Thomas — and two Democratic candidates — Walsh and Matt. Each of the Democratic candidates had the indorsement of the Law Preservation party. Without any fraud being intended, the official

---

* Affd., 264 N. Y. 40.

charged with the duty of setting up the voting machines so adjusted three of them that a vote for Thomas also counted for Walsh, and *vice versa*. As a result, a voter attempting to vote, say for Matt, and either Walsh or Thomas, was registered on the machine as voting for all three — Matt, Walsh and Thomas. The result was a total vote for assessors in excess of the number which could possibly be warranted by the number of electors actually voting.

Another proceeding was started, pursuant to subdivision 4 of section 330 of the Election Law to procure such order " as justice may require," in respect of " void ballots shown upon the statement of the canvass," based upon the information gained in the first proceeding. Section 267 of the Election Law makes applicable all provisions of the Election Law as far as practicable to elections conducted by the use of voting machines. We construe the word " ballots " as used in subdivision 4 of section 330 of the Election Law, to include a vote cast by the use of a voting machine.

The statements of canvass on their face in each case show an excess in the recorded votes for assessor over the number which could properly be accounted for by the number of electors who voted.

The order appealed from provides, in substance, that the board of canvassers shall count all the ballots shown by the machines to have been cast for all the candidates for assessor, excepting only those shown by the machines to have been in favor of Thomas and Walsh, and that no votes whatever should be counted for them. This is a manifest injustice to Thomas and Walsh, but it is impossible to tell how many votes should be credited to them respectively.

If paper ballots were involved, the matter would be easy enough. In such case all the ballots for assessor, no matter for which of the six candidates they had been cast, would be rejected from the canvass. (Election Law, § 219, rule 6.) We think the same thing should be done here. It can, of course, be urged that in the case of paper ballots where three of a group of candidates are voted for and only two are to be elected, it is impossible to determine any part of the intention of the voter, while in case of a voting machine adjusted as were those here involved, it can be said with certainty that a vote registered by the machine to the candidate Matt, for instance, was actually intended by the voter as a vote for Matt. The manifest injustice, however, of depriving the candidates as to whom the machine was maladjusted of their entire vote upon the machine while giving all other candidates the benefit of all their registered votes, leads us to hold that the rule laid down by rule 6 of section 219 should apply to a voting machine case. Walsh and Thomas were as innocent of the mis-

take as any of the other candidates. A result which is both just and logical is hard to reach in such a case as this. It seems to us that there is at least less likelihood of injustice in the method here applied than would be done by depriving only Thomas and Walsh of the ballots cast for them.

The order should be reversed on the law, without costs, and a final order granted, directing the boards of inspectors of election to correct their statements of canvass and returns by eliminating therefrom all votes cast for candidates for the office of assessor on the defectively adjusted machines.

SEARS, P. J., and LEWIS, J., concur; TAYLOR and THOMPSON, JJ., dissent in an opinion by TAYLOR, J., and vote for eliminating only the votes registered for the candidates Thomas and Walsh on the three defectively adjusted machines.

TAYLOR, J. (dissenting). I know of no way of bringing about a result which would truly register the choice of each elector who voted upon these machines except to have a new election. We cannot order this, a primary election not being involved. (Election Law, § 330, subd. 2.) We differ in our views as to how — under the record and the law — justice can be approximated.

As these machines were " hooked up " I find no course of reasoning which leads me elsewhere than to the conclusion that every vote registered on the back of the machines for every candidate except Thomas and Walsh, expressed the true intention of a voter and nothing more or less. A person who voted for Creedon, e. g., should have his vote counted whether he voted for Creedon alone or for Creedon and Thomas or Walsh. The unfortunate situation arises as to Thomas and Walsh. Every vote for Thomas registered for Walsh and *vice versa* whether its voter intentionally voted for two candidates or for but one. Every vote registered for Walsh when a voter turned the lever for Thomas was void and *vice versa*. We are determining a question arising in respect of void ballots. (Election Law, § 330, subd. 4). There were in all 1,413 void ballots for assessor in the three districts. " If  *  *  * for any reason it is impossible to determine the voter's choice of a candidate or candidates for an office  *  *  * his vote shall not be counted for such office or position  *  *  * but shall be returned as a blank vote thereon." (Election Law, § 219, rule 6.) It was impossible to determine any voter's choice of a candidate as between Thomas and Walsh, whereas as to any of the other candidates there could be no doubt. The provisions of the Election Law " apply as far as practicable to voting machines, except as herein provided " (Election Law, § 267), and there is no provision affecting the portion of the statute just quoted.

Conjecture of one kind and another (the briefs offer us samples) points the way to results of various kinds. I cannot find reasonable basis for any of the suggested guesswork. With appreciation that we should " make such order as justice may require " (Election Law, § 330), but with a realization that exact justice cannot be arrived at in the situation presented under any solution, it seems to me (a) that every vote registered for Creedon, Matt, Kinzele and Toby should be counted for them, and (b) that under the controlling statutes the votes registered for Thomas and Walsh on the three defective machines cannot be counted and must be returned as blank votes. (Election Law, § 219, rule 6.)

THOMPSON, J., concurs.

Order reversed on the law, without costs, and order granted directing the boards of inspectors of election to correct their statements of canvass and returns by eliminating therefrom all votes cast for candidates for the office of assessor on the defectively adjusted voting machines. Certain findings of fact and conclusions of law disapproved and reversed and a new conclusion made.