In the Matter of the Application of FRANK J. HOGAN, Petitioner, for an Order of Restraint against THE SUPREME COURT OF THE STATE OF NEW YORK, Honorable PIERCE H. RUSSELL, Individually and as a Justice Thereof, and JOHN J. AHERN, Respondents.

Third Department, Extraordinary Term, December 8, 1939.

*John H. Broderick*, for the petitioner.

*Ellis J. Staley*, for the respondents.

Frank J. Hogan was the candidate of the Democratic party for the office of mayor and John J. Ahern the candidate of the Republican party. The contest was so close that the result in the second district of the eighth ward would be decisive of the election. It is conceded that the voting machine used in that district was defective and would not register more than eleven votes (which was the number of votes registered for Ahern) for the candidate occupying the place on the ballot where Ahern's name appears. It is further a fact that Ahern would have been elected had he received in that district the average number of votes which the candidates of his party received. The result of the ballot in that district was Hogan 471, Gilhooley 15, Ahern 11. The same machine when used in the first election district of the thirteenth ward of the city of Troy in 1938 was likewise defective and recorded for the candidate Mead for United States Senator a markedly less number of ballots than his associates received and the inspectors of election of that district and ward at that time advised the commissioners of election of the faulty condition of the voting machine number 2588.

These proceedings are brought under section 330 of the Election Law. It states in part as follows: " The Supreme Court is vested with jurisdiction to summarily determine any question of law or fact arising as to any of the subjects set forth in this section, which

shall be construed liberally. Such proceedings may be instituted as a matter of right and the Supreme Court shall make such order as justice may require. * * * 4. Protested, wholly blank or void ballots shown upon the statement of the canvass in any election district or districts, or any protested or rejected absentee voters' ballots * * *."

It has been determined by the Court of Appeals in *Matter of Creedon* (264 N. Y. 40) that ballots as mentioned in the foregoing subdivision include a ballot on the voting machine and the record thereof. If *Matter of Carson* (164 Misc. 945; affd., 254 App. Div. 801) holds a different doctrine we disaffirm it. In our view the question here presented was not considered there as the certificate of election had been issued.

The examination of the individual voters as to the way in which they cast their ballots after election is competent where it appears that there was a defect in the voting machine. (*People ex rel. Deister* v. *Wintermute,* 194 N. Y. 99.)

An order of prohibition is an unusual and harsh remedy not ordinarily to be granted where an opportunity for correction of the error on appeal exists.

We are denying this application as a matter of law and not as a matter of discretion for the reason that we desire that the parties may be able to review our decision in the Court of Appeals.

Application for order of prohibition denied, as a matter of law.

HILL, P. J., CRAPSER and HEFFERNAN, JJ., concur; BLISS and SCHENCK, JJ., dissent, each with an opinion.

BLISS, J. (dissenting). I dissent upon the authority of *Matter of Carson* (164 Misc. 945; affd., 254 App. Div. 801). The identical claim here involved was made in the *Carson* case, viz., that the court might, in a summary proceeding such as this, determine the question as to whom the voters in that district had actually voted for and direct a recanvass in accordance with such determination. We held unanimously against this contention.

*Matter of Creedon* (264 N. Y. 40) is not an authority for the jurisdiction now attempted to be exercised by the Special Term. There the court directed the inspectors of election to correct their statements of canvass and returns by eliminating therefrom all votes cast for candidates for the office of assessor on certain defectively adjusted voting machines. It was stated in both the prevailing and dissenting opinions in the Appellate Division (239 App. Div. 592), respectively, that it was impossible to tell how many votes should be credited to the respective candidates and that there was no way of bringing about a result which would

truly register the choice of each elector who voted upon those machines except to have a new election and that this the court could not order. Of course, if the Special Term here is within its powers in its determination to take the testimony of the individual voters as to how they voted then those statements of the law in the two opinions in the Appellate Division are incorrect.

SCHENCK, J. (dissenting). This is an application under article 78 of the Civil Practice Act for a restraining order in the nature of a writ of prohibition.

At the general election held November 7, 1939, petitioner Frank J. Hogan, as the Democratic candidate for mayor of the city of Troy, was registered on the voting machine of the second district of the eighth ward of that city as having received 471 votes against 11 for respondent John J. Ahern, the Republican candidate, and 15 for Christopher J. Gilhooley, running on the American Labor party ticket. Inspection of the voting machine made one week after the election, pursuant to section 333 of the Election Law and with concurrence of all of the parties in interest, revealed that the machine had failed, through a mechanical defect, to register after the eleventh vote had been registered in row A, column 6, the position occupied by Ahern.

In a proceeding entitled " Supreme Court — Rensselaer County. In the Matter of the Application of John J. Ahern for Order of the Supreme Court relative to the election for the office of Mayor of the City of Troy at the general election held November 7, 1939, as justice requires," respondent Ahern sought an order, returnable before Mr. Justice RUSSELL, setting aside the canvass of the inspectors of election for that district or, in the alternative, setting aside the election for the office of mayor in that district, and authorizing the holding of a special election therein. On the return of the order to show cause, respondent Ahern seems to have abandoned both such forms of relief, but he urged the court to take the testimony of the voters in that district as to the candidates for whom they had voted, or had intended to vote, he contending that the court had such power under subdivision 4 of section 330 of the Election Law. Mr. Justice RUSSELL having announced his determination to proceed to take such testimony, petitioner has applied to this court for an order restraining further proceedings to that end.

The question presented is whether, under subdivision 4 of section 330 of the Election Law, the Supreme Court has power to take such testimony and to direct a recanvass of the votes in accordance with the proof adduced.

It has long been settled that in the review of election matters the court has no inherent power, but only such jurisdiction as is conferred upon it by statute. (*Matter of Tamney* v. *Atkins,* 209 N. Y. 202, 206; *People ex rel. Brink* v. *Way,* 179 id. 174, 180, 181; *Matter of Hearst* v. *Woelper,* 183 id. 274, 281; *Matter of Holley* [*Rittenberg*], 268 id. 484, 487.) So, too, Mr. Justice HILL, now Presiding Justice of this court, held in *Matter of Oliver* (234 App. Div. 170, 174), saying: "The broad and liberal powers granted to the court in the opening paragraph of section 330 are limited to 'the subjects set forth in this section.' * * * The power granted the courts to 'summarily determine' concerning certain named subjects and the direction that the section should be 'construed liberally' does not grant general equity powers to interpret the will of the voters, neither does it abrogate the ancient writ of quo warranto or repeal the statutes of procedure and availability to test the title to a public office."

Neither has the court any such jurisdiction by virtue of its equity powers. (*Schieffelin* v. *Komfort,* 212 N. Y. 520, 535; *Welker* v. *Lathrop,* 210 id. 434, 436; *People* v. *Albany & Susquehanna R. R. Co.,* 57 id. 161, 172.)

Were the Supreme Court to proceed summarily to review the result of the vote for mayor in the district involved, it would deny to petitioner his constitutional right to a bi-partisan counting of the votes, secured to him by section 8 of article 2 of the Constitution, as well as his guaranty of a jury trial preserved by section 2 of article 1 of the Constitution. (*Matter of Metz* v. *Maddox,* 189 N. Y. 460, 466, 473; *People* v. *Albany & Susquehanna R. R. Co.,* 57 id. 161, 172.) It is true that Chief Judge CULLEN was dealing in the *Metz* case with a situation where one of the contesting parties had been installed in office, but his dicta, repeatedly asserted as to the right to a jury trial in a contest involving title to public office, are entitled to the greatest respect. More than once he emphasized the need for appraisal by a jury of the testimony of witnesses as to how they had voted (pp. 467, 469).

Where title to public office is involved, there is no short cut afforded by law by way of a substitute for the ancient writ of quo warranto. So Mr. Justice HILL held for this court in *Matter of Oliver* (*supra*), where the election was held on November 3, 1931, the orders under review were made during the same month, and the case was decided by this court before the end of the year, so that neither of the contending parties had yet taken office by virtue of any certificate of election. Mr. Justice BERGAN, whose order was unanimously affirmed by this court in *Matter of Bonacker* v. *Clark* (254 App. Div. 801), said in an unreported opinion at

Special Term: "The remedy for a failure of a voting machine to record votes cast is not with canvassers, but is vested solely in this court in a plenary action, brought by the People of the State, at the instance of the candidate who has been injured by the failure of the machine to record the expressions of the voters. The path to full and adequate relief is clearly marked and well defined. There is available no indirect means to obtain that relief in this proceeding. * * * There exists no other easier or more indirect way to determine how the electors attempted to vote on the defective voting machine and to declare Mr. Carson elected from their proof. He has a remedy in quo warranto and it is his only remedy."

There is a complete answer to any suggestion that petitioner's remedy is to permit the proceeding before Mr. Justice RUSSELL to continue and to appeal from any adverse order therein, for it is obvious that such a course would consume much time, involve heavy expense to the parties and to the taxpayers of Rensselaer county, cause grave inconvenience and possibly result in confusion over the legality of the acts of whichever party might be declared by Mr. Justice RUSSELL to have been elected mayor. The same objection was raised to an application for a writ of prohibition in *Matter of Culver Contracting Corp.* v. *Humphrey* (268 N. Y. 26), where a prohibition order was successfully sought to restrain a justice of the Supreme Court from taking testimony concerning physical damage to adjoining property taken by condemnation for the construction of a subway. Said Judge FINCH (p. 40): "When the court, over objection, admits evidence which is directed only to prove such damages, it is clearly exceeding its jurisdiction. True, objections have been made and exceptions taken by the aggrieved parties and the question is subject to review on appeal. The court, however, was overstepping its bounds. A mass of testimony was being taken, unnecessary expense incurred, and the trial needlessly prolonged. Under the circumstances application for an order of prohibition was proper and the Appellate Division in its discretion possessed the right to grant the order."

Really the question now presented is no longer an open one in this court which in May of last year unanimously affirmed an order denying an application, in a proceeding instituted under section 330 of the Election Law, for the taking of oral proof of electors as to how they had voted in an election district where, as here, the voting machine had failed to register through a mechanical defect. (*Matter of Carson*, 254 App. Div. 801.) In the course of his opinion at Special Term (164 Misc. 945), Mr. Justice BERGAN said: " The provisions of section 330 of the Election Law, however, do not confer

upon the court jurisdiction in this scope '' (p. 948). And again: '' A summary determination of a question of this kind is not within the jurisdiction of the court. * * * There seems presently no jurisdiction summarily to direct a re-canvass of a vote shown upon a voting machine in accordance with findings based upon extrinsic proof '' (p. 949).

Since it clearly appears upon facts not in dispute that the learned justice below is about to proceed in excess of his jurisdiction, petitioner's prayer for a restraining order should be granted, but without costs. (*Quimbo Appo* v. *People*, 20 N. Y. 531, 542; *Thomson* v. *Tracy*, 60 id. 31, 37; *People ex rel. Lemon* v. *Supreme Court*, 245 id. 24, 35.)

No other practical remedy being available to petitioner, were this court, in the exercise of discretion, to deny the relief sought, it would constitute legal error reviewable by the Court of Appeals. (*Matter of Baltimore Mail S. S. Co.* v. *Fawcett*, 269 N. Y. 379, 384.)