## CHARLES J. FOX
### *vs.*
## THOMAS J. ENGLISH ET ALS.

Coram: Hon. Patrick B. O'Sullivan, a Judge
of the Superior Court.

MEMORANDUM FILED JUNE 12, 1940.

*Mark C. Candee*, of Greenwich, for the Petitioner.

*H. Allen Barton*, of Greenwich, for the Respondents.

O'SULLIVAN, J. As candidates for selectmen of the Town ·of Greenwich, the Democratic party nominated the petitioner .and Thomas J. English in the fall of 1939, while the Republican party nominated Wilbur M. Peck and Otto Klumpp. The election was held on October 2nd and upon the closing of the

polls the moderator made his canvas of the tabulations on the voting machines, which disclosed that Peck had received 5,051 votes, Klumpp 5,005, English 2,612 and Fox 2,605. Thereupon, he declared the first three to be the duly elected selectmen of the town. Claiming to be aggrieved, Fox brought his petition to a judge of the Superior Court, this being a privilege accorded him by the provisions of section 294 of the General Statutes, Revision of 1930.

His first claim is that the town was engaged in the election of four selectmen rather than of three, and that therefore he should have been declared elected to that office.

Under statutory law, Greenwich was required to elect three selectmen. (Cum. Supp. [1935] §54c.) Had it so desired, it could have added to this number one, two, three or four more. But such an increase could have been brought about only by an affirmative vote to that effect passed by a town meeting held for that purpose prior to the election in question. No such vote was ever taken and it is utterly without signifii- cance that four candidates were upon the ballot. A party caucus cannot substitute its action for that required of a town meeting. Hence, the number of selectmen to be chosen at the October election was limited to three.

The petitioner next asserts that numerous persons, whose voting franchise had been forfeited, voted illegally. This ap- pears to be the fact but for whom they voted is not disclosed in even a single instance. Under these circumstances, it is im- possible to conclude that the petitioner was the loser thereby. For aught that appears to the contrary, he may have been the gainer. Under our law, a candidate seeking relief must furnish at least some proof that he was prejudiced by the votes of those not lawfully entitled to participate in the election. *State ex rel. Andrew vs. Lewis*, 51 Conn. 113, 124. Lacking this proof, and in the absence of any indication of fraud, this second claim of the petitioner must be dismissed as insufficient.

His third claim is that in each voting district a discrepancy existed between the number of votes cast and the number of those checked as having voted. The checkers were obviously in error in every district but this does not necessarily prove any illegality. "In the case of the numbers shown upon the check list as having voted, the element of human error must enter very largely into the question whether there is a discrepancy,

for in the hurry of a crowded voting period errors in the checking of names upon the registry lists are naturally to be expected." *Comley, State's Attorney, ex rel. Harrison vs. Wilson,* 116 Conn. 36, 43. The differences in the figures in the instant case are not so startling as to create a conviction that anything other than human fallibility was responsible for them. This receives added strength in view of the absence of any claim or proof of fraud.

The final grievance of the petitioner centers around an excess of votes recorded on the machines. Greenwich has eleven voting districts and in the first, four voting machines were used of which one was numbered 16771. This machine, like all the others, was equipped with a public as well as a protective counter. The latter recorded cumulatively, that is, it was never set back to zero but it continued to record every vote cast on the machine since it was first put into service. The public counter, on the other hand, was set back to zero before the polls opened.

On the morning of election day, the proper officials examined the protective counter and found the total to be 7903. Upon the closing of the polls, it disclosed the figure 8241, indicating that 338 voters had used the machine. This number was verified by the total appearing on the public counter. As each elector was entitled to vote for but two candidates for selectmen, the maximum vote capable of being recorded for these offices should have been 676, which is twice the number of those who cast their votes. In spite of this, the machine recorded that Peck had received 298 votes, Klumpp 217, English 127, and Fox 113. This furnishes a total of 755, and hence exceeds by 79 the maximum that was legally possible. What caused this remains a mystery. No claim of fraud has been pressed and certainly none has been established. We are confronted, then, with a situation created by an unexplained cause and the most reasonable inference is that in some manner the machine failed to function properly.

On this set of facts, the petitioner seeks one of two sources of relief. He suggests, in the first place, that the entire election be declared void and that an order be issued requiring the Town of Greenwich to hold a new one. Assuming for the moment that a judge of the Superior Court has the power to take such action, he should, it seems to me, be most reluctant to impose upon the town a financial burden running into several

thousand dollars unless the need therefor is overwhelming. I feel more inclined to the view that if a new election should be held, it ought to be limited to the first district.

But there is a more imposing reason than that of financial burden which precludes the undersigned from passing the order suggested. As indicated above, this petition is made possible solely by virtue of section 294 of the General Statutes, Revision of 1930, the pertinent part of which reads, in substance, as follows: Any person claiming to have been elected selectman of any town may bring his petition to any judge of the Superior Court, alleging the facts on which such claim is founded, and such judge shall thereupon hear and determine such petition, and if in favor of the petitioner, his certificate to that effect shall entitle the petitioner to hold and exercise the duties and powers of such office.

This procedure is of a special statutory nature, and by its use a judge is called upon to exercise a judicial power in an original judicial matter. *Matter of Gilhuly's Petition,* 124 Conn. 271, 276. Not only must the petitioner pursue his remedy in strict conformity with the statute, but the special tribunal may go no further in extending relief than that outlined in the statute. *Gunn vs. Robles,* 100 Fla. 816, 130 So. 463.

The instant matter is not something ancillary to an action in or about to enter court. The general equity power which the undersigned might have while acting as a judge of the Superior Court when issuing injunctive orders or appointing temporary receivers—this general equity power, it seems to me, is not available for use in a proceeding such as that now under discussion. *Clapp vs. Hartford,* 35 Conn. 66; *Trinity College vs. Hartford,* 32 id. 452. Consequently, I hold that, in view of the nature of the proceeding, my powers and duties are circumscribed by the specific provisions of said section 294, and and as that section indicates that if the decision is to be in favor of the petitioner, the only remedy is the issuance of a certificate to the effect that the petitioner is entitled to exercise the duties and powers of the office of selectman. This interpretation precludes the availability of a decree as to any new election. *Gunn vs. Robles, supra.*

But the real aim of the petitioner is to obtain an order that the vote recorded on machine No. 16771 be discarded in its entirety and that the election of the selectmen be determined

by the totals appearing on all the other machines. If this course were followed, the vote for the petitioner would exceed that of English by seven. But this summary method of disfranchising 338 citizens should not be pursued, if at all, unless there is some basis for the belief that a real, and not a fanciful, injustice has been placed upon an apparently defeated candidate. No such injustice can be gleaned from the facts of the instant case and from the logical inferences to be drawn therefrom. On the contrary, it can be demonstrated with reasonable certainty that Fox has in no way been prejudiced and that the sole beneficiary of the defectively recording machine was Peck, one of the Republican nominees.

The total vote recorded for the Democratic candidates, as well as for their opponents, was uniform and stable, indicating that in each instance it was based on party lines rather than on personal popularity or unpopularity.

In other words, there were no sizeable bulges in the party vote for any individual, save in the single instance of Peck's vote on machine No. 16771. This may be graphically portrayed by listing the vote of Peck and Klumpp as recorded on the 27 machines in use.

| DISTRICT | PECK | KLUMPP |
|---|---|---|
| First (No. 16771) | 298 | 217 |
| " | 235 | 249 |
| " | 147 | 147 |
| " | 279 | 292 |
| Second | 171 | 177 |
| " | 97 | 95 |
| Third | 233 | 229 |
| " | 178 | 171 |
| Fourth | 143 | 149 |
| " | 191 | 187 |
| " | 168 | 160 |
| Fifth | 182 | 181 |
| " | 178 | 177 |
| Sixth | 197 | 199 |
| " | 190 | 188 |
| " | 198 | 195 |
| Seventh | 217 | 211 |
| " | 113 | 118 |
| " | 114 | 116 |
| Eighth | 366 | 373 |

| | | |
|---|---|---|
| " | 325 | 335 |
| " | 242 | 249 |
| Ninth | 83 | 82 |
| " | 63 | 62 |
| Tenth | 163 | 162 |
| " | 93 | 95 |
| Eleventh | 187 | 189 |

From the above it will be observed that Peck's vote exceeded his colleague's on thirteen machines and an analysis of the figures further indicates that on one machine he ran eight votes ahead, on another seven votes, on another six votes, on two others four votes, on another three votes, on two others two votes and on five others one vote. Yet on the defective machine his total was 81 in excess of that of Klumpp, a figure astonishingly close to the number of excess votes (79) which that machine recorded. This furnishes the only instance of a real bulge in the vote for any candidate on either ticket.

Furthermore, it is significant that on the other three machines in the district where No. 16771 was in operation, the best that Peck did was to tie Klumpp on one. On another, he was behind by 13 votes, and by 14 votes on the other. And yet these machines were reflecting the same cross section of voting opinion as that recorded on the defective machine.

Again, Peck's vote on No. 16771 is quite out of line with his fellow party nominees, whose vote ranged from 209 to 215.

Finally, it is of significance that English should lead Fox on all the machines in the first district. On one he led by three votes, on another by 12 votes, on another by 13, and on No. 16771 by 14. And on each machine, English's lead is substantially comparable to that indicated on the others.

Consequently, I conclude that English received no benefit and Fox no harm from the defective machine, and that only Peck was benefited by the excess of votes recorded.

The cases cited by the petitioner are not in point. In most of them, the grossest type of fraud was present. In *Matter of Creedon*, 264 N.Y. 40, 189 N.E. 773, the court permitted to stand a ruling eliminating the returns from three defective machines. But the election result was not affected thereby. The court, after finding no error in the ruling, concluded by saying: "The question would have been different if the effect of rejecting all the votes recorded on the three defective

machines, might have been the election of a candidate who did not receive a plurality of the votes."

The petition is dismissed and counsel may furnish a judgment file which approved practice demands should be drawn and filed in court. *Denny vs. Pratt*, 104 Conn. 396, 398.