In the Matter of DONALD O'BRIEN et al., Appellants, against COMMISSIONER OF EDUCATION OF THE STATE OF NEW YORK, Respondent.

Third Department, March 21, 1957.

*Edward M. Horey* for Donald O'Brien, appellant.

*John W. Ellis* for William C. Murphy, appellant.

*Charles A. Brind, Jr., John P. Jehu, Elizabeth M. Eastman* and *George B. Farrington* for respondent.

HALPERN, J. The petitioners appeal from an order of the Special Term which dismissed on the merits their petition under article 78 of the Civil Practice Act seeking to annul a determination made by the Commissioner of Education, sustaining a special election in the Ellicottville Central School District, Cattaraugus County.

On May 20, 1955, a special district meeting was held to vote upon a proposition to authorize the construction and financing of a new junior-senior high school. The proposition was carried by 8 votes: 704 votes were cast in favor and 696 against.

On June 17, 1955, the petitioner-appellant O'Brien appealed to the commissioner for an order voiding the election. The principal grounds were: first, that the public counters on the two voting machines used in the election showed that the machines had been operated 1,461 times, whereas the poll list kept by the clerk showed that only 1,437 persons had been authorized to vote; second, that the school board had improperly used public funds for propaganda in favor of the proposal.

As to the first ground of attack, the commissioner held that the petitioners had not shown facts sufficient to warrant the invalidating of the election. With this conclusion, we are in agreement. It appears that 1,400 valid votes were cast either for or against the proposition. It also appears that 37 of the persons whose names appeared on the poll list had cast blank votes, that is, they had apparently entered the voting machine enclosure and pulled the handle of the curtain which caused the public counter to indicate that a vote had been cast but they had not pulled down a lever voting either for or against the proposition. However, the public counters showed that the handles had been pulled back and forth a total of 1,461 times. This indicated a total of 1,461 votes, or 24 in excess of the total number of voters whose names appeared on the poll list. It is this excess which is the basis of the petitioners' attack upon the election.

The petitioners originally contended that "unknown and unregistered" persons had been permitted to vote. But the affidavits filed in opposition demonstrated conclusively that no one had been allowed to vote except the persons whose names appeared on the poll list. The petitioners then shifted the ground of their attack to the claim that some of the authorized voters had been presented with additional "opportunities to vote". By this euphemistic expression, the petitioners presumably meant to charge that some of the authorized voters had voted two or more times (and that, correspondingly, more than 37 of the authorized voters had cast blank votes). But the petitioners shrink from any direct charge that any voter voted more than once. They argue instead that the election should be invalidated merely because some of the voters had an opportunity to vote more than once. Of course, a showing of the existence of opportunities to cast illegal or improper votes is not enough to invalidate an election; there must be a showing that illegal votes were actually cast. Otherwise, the presumption of regularity stands unrebutted.

As the commissioner said in his decision, it would be sheer speculation to conclude that any voter voted more than once, upon the basis of the facts alleged in the petition. An explanation of the excess number of votes shown on the public counters is given in the affidavits submitted by the respondent Board of Education. It appears that one of the two machines used in the election was over 25 years old and that, in order to enable the voter to move the handle which opened and closed the curtain, a cord had to be pulled by an attendant. Sometimes, the tension which he placed on the cord was so great that the

public counter registered it as an opening and closing of the curtain. Furthermore, some voters, because of inexperience or nervousness, pulled the handle of the machine back and forth twice in the process of voting, even though they cast only one vote. But, as the commissioner said in his decision, there is no need to rely upon the explanation given by the board. Even if the excess number on the public counters remained an unexplained mystery, the most that could be inferred was that some voters had opened and closed the curtain more than once; there would still be no basis for an inference that they had voted more than once.

It thus appears that even if the allegations of fact in the petition stood unexplained, there would be no ground to invalidate the election (cf. *Matter of Creedon*, 264 N. Y. 40).

As to the second ground of the attack upon the election by the petitioners, the commissioner found that the alleged misconduct of the Board of Education was " not sufficient to cause a reversal of the action of the meeting ". This conclusion was neither arbitrary nor capricious and therefore we have no power to interfere with it (Education Law, §§ 310, 2037). If there was any improper use of public funds, in publicizing the proposal favorably, the remedy is to compel the restoration of the funds, not to invalidate the election.

The petitioners complain that the commissioner did not hold a hearing and that therefore they did not have an opportunity to present evidence in support of their contentions. There is no provision in the statute which requires the commissioner to hold a quasi-judicial hearing or to receive evidence. The nature of the procedure upon an appeal to the commissioner is left entirely to the commissioner's discretion. The regulations which he has adopted pursuant to section 311 of the Education Law provide for oral argument, the filing of briefs and the submission of affidavits but they do not provide for a hearing at which evidence may be introduced.

There can be no doubt as to the validity of the commissioner's regulations. No question of due process of law is involved. The Legislature has plenary power over the educational system of the State and it may authorize the commissioner to decide an appeal with respect to a school matter without holding a quasi-judicial hearing (*Matter of Kuhn* v. *Commissioner of Educ.*, 1 A D 2d 533, motion for leave to appeal denied 2 N Y 2d 710; cf. *Matter of Kaney* v. *New York State Civil Service Comm.*, 190 Misc. 944, affd. 273 App. Div. 1054, affd. 298 N. Y. 707). The principle of *Hecht* v. *Monaghan* (307 N. Y. 461) invoked by the petitioners, is not applicable to an administrative

decision of the kind here involved. The *Hecht* case dealt with the revocation of an occupational license; the court held the license to be a property right, of which the licensee could not be deprived without an administrative hearing of a quasi-judicial character. The court put to one side other areas of administrative action in which a quasi-judicial hearing is not required (p. 468 of the *Hecht* opinion). (See, also, *Matter of Fink* v. *Cole*, 1 N Y 2d 48.)

Since there is no statutory provision for a hearing at which evidence is to be taken and no constitutional requirement of such a hearing, an article 78 proceeding to review the commissioner's decision should be regarded as one in the nature of mandamus, rather than certiorari. This was sometimes overlooked under the earlier practice, antedating the adoption of article 78, and certiorari was used to review the commissioner's decisions, but this was apparently done without objection and without judicial determination of the point (Benjamin on Administrative Adjudication in New York State, vol. 1, pp. 353–357; vol. 4, pp. 58–59, n. 77).

But the fact that there is no right to an administrative hearing does not mean, as the petitioners contend, that the aggrieved party is deprived of all opportunity to present common-law evidence in support of his version of controverted facts. If the aggrieved party claims that the validity of the determination sought to be reviewed turns upon the resolution of underlying questions of fact and the aggrieved party desires to present common-law evidence bearing upon those questions, his remedy is to ask for a judicial hearing at Special Term in the article 78 proceeding. In an appropriate case, in a proceeding in the nature of mandamus, the court may direct a hearing to be held (Civ. Prac. Act, § 1295; *Matter of Arcuri* v. *Macduff*, 286 App. Div. 17, and the cases there cited). However, in order to be entitled to a hearing, the petitioner must demonstrate that there is a triable issue of fact, the resolution of which in his favor would leave no rational basis for the administrative decision. This the petitioners failed to do in this case. The opposing affidavits demonstrated conclusively that there was no triable issue as to the claim that unauthorized persons had been allowed to vote. The court was therefore justified in deciding that issue summarily upon the basis of the affidavits, just as it would have decided a similar question upon a motion for summary judgment in a common-law action. The factual material which the petitioners wished to present as to the method of operation of the voting machines and the impossibility of partially moving the handle or " jiggling " it so as to activate

the public counters, was of little relevance. First of all, the machine involved here was not a new one and the proof offered related to the functioning of a new machine. In any event, regardless of any proof which might be introduced as to the functioning of the machine, the whole claim that any voter voted twice would still rest purely on speculation and conjecture; this could not be made the basis of invalidating the election. Even if all the allegations in the petition as to this matter were accepted as true, the only inference that could be drawn would be that the handle of the machine had been moved improperly, not that improper votes had been cast. None of the proof offered by the petitioners, even if accepted at its full value, could demonstrate that the commissioner's decision upholding the election had no rational basis or that it was arbitrary or capricious. Therefore, the Special Term correctly disposed of the proceeding summarily, without taking proof (Civ. Prac. Act, § 1295).

The order appealed from should be affirmed, with costs.

FOSTER, P. J., BERGAN, COON and GIBSON, JJ., concur.

Order affirmed, with $50 costs.