In the Matter of NATHAN GINSBERG et al., Petitioners, against WILLIAM J. HEFFERNAN et al., Constituting the Board of Elections of the City of New York, et al., Respondents.

Supreme Court, Special Term, Bronx County, November 29, 1945.

*Samuel J. Joseph* for petitioners.

*Shapiro & Sikawitt* for Michael N. Delagi, respondent.

*Louis Susman* for Agnes Craig, respondent

*Leo Isacson* for Abraham Shapiro and another, respondents.

McLAUGHLIN, J. This application seeks an order restraining the Commissioners of Elections of the City of New York from issuing certificates of election to those respondents who were the successful candidates for the office of Municipal Court Justice in the Second Municipal Court District, Borough of The Bronx. This court is also asked to declare the general election held on November 6, 1945, for these offices invalid and to direct that a new and special election be held.

Both petitioners were candidates of the Republican party for the office of Municipal Court Justice in the Second District. For

the same office the Democratic, American Labor and Liberal parties each had two candidates. Two justices were to be elected to office. The results of the election, which was by voting machine, are as follows:

10A
*Republican*
Nathan
Ginsberg — 31405

11A
*Republican*
John J.
Calanese — 28926

10B
*Democratic*
Michael N.
Delagi — 104802

11B
*Democratic*
Agnes M.
Craig — 106711

10C
*American Labor*
Abraham
Shapiro — 52954

11C
*American Labor*
Samuel
Natapoff — 50724

10D
*Liberal*
Louis
Dickstein — 27294

11D
*Liberal*
Isaac Ben
Greenman — 28473

The present application is based upon the fact, which is not disputed, that the voting machines in the 498 election districts comprising the Second Municipal Court District were set up in such manner that it was impossible for a voter to vote for two candidates for the office of Municipal Court Justice whose names appeared in the same vertical column. In other words, if a voter wished to vote, for instance for the Democratic candidate Delagi, then he could not also vote for the Republican candidate Ginsberg whose name appeared above that of Delagi in the same column. He could vote for either, but not for both candidates. The voting machines were so mechanically arranged that it was possible to vote diagonally but not vertically.

When the defect in the machines was discovered, it was brought to the attention of the Board of Elections It was then ascertained that the cause of the trouble was due to the fact that the pins in the back of the voting machines had not been removed in the grouping of Municipal Court Justices. Steps were then taken to correct the error, and it appears that from approximately 11:00 A.M. to the closing of the polls on election day, employees of the Board of Elections and also voting

machine experts went to the various election districts and removed the pins from the back of the machines so as to permit proper voting.

As a result of this situation, there were a number of persons who wished to vote, but were prevented from voting on the machines for petitioners. Just how many such persons there were, it is, of course, impossible to say. The results of the election set forth in detail above show, however, that of the total number of votes cast for the office of Municipal Court Justice in the Second District, approximately 14% went to the Republican candidates. The Democratic candidates received approximately 49% of the total vote, the American Labor candidates 24%, and the Liberal Party candidates 13%. It also appears that the Democratic candidates were successful over the Republican candidates by a ratio of about three and one half to one, and as against the American Labor candidates by about two to one.

The respondents Shapiro and Natapoff, candidates of the American Labor Party, have joined with petitioners in asking that the election be declared invalid and a special election ordered. The Liberal Party does not join with the petitioners in asking a new election but takes the position that, in view of the overwhelming verdict in favor of the Democrats, it is apparent that the results were not influenced in any substantial respect by the defect in the machines. Respondent Greenman, candidate of the Liberal Party, also takes the position that the result of a new election would be no different, as does the respondent O'Donnell, candidate of the American Labor Party in the First Municipal Court District where a similar application is before the court on a companion motion.

Petitioners in their moving papers stated that in making this application they were appealing to the general jurisdiction of the Supreme Court, and also based their application on article 14 of the Election Law. On the argument of the motion, however, counsel for petitioners stated that no claim would be made that this court had power to grant the relief sought under the provisions of the Election Law. Petitioners now proceed on the theory that they are entitled to relief under article 78 of the Civil Practice Act, and also assert that this court has general jurisdiction in a proceeding of this nature. The moving papers did not specifically ask any relief under article 78.

By statute (the Election Law), certain powers are specifically given to this court to remedy summarily errors or mistakes in connection with general elections. Since the petitioners, however, have abandoned any claim that this case comes within the

provisions of article 14 of the Election Law, it is not necessary to examine this aspect of the case. It seems clear, however, that this court has no power under the Election Law to grant the relief sought here. (*Matter of Hogan* v. *Supreme Court*, 281 N. Y. 572.)

The petitioners now assert that this court may order a new election under article 78 of the Civil Practice Act. The court is asked to direct the Commissioners of Elections to hold a new and special election. While the court could under article 78 direct the commissioners to perform their duties in carrying out purely ministerial acts, that is not what is asked here. The election has already been held and candidates have been elected to office. There is no duty or power in the Commissioners of Elections to do anything further. Nor can this court order them to do anything further. No case has been pointed out to us which holds that where an election has been held and officials elected, the court has power under article 78 to void that election and direct the holding of a new one. In a situation where a vacancy existed in office, the court has directed the holding of a new election to fill that office (*People ex rel. Kelly* v. *Common Council*, 77 N. Y. 503). That is not the case here for there is no vacancy and the offices in question have been filled at the general election.

The courts cannot obtain or acquire any further jurisdiction than that which was originally inherent in the court, together with those specific powers which were subsequently given to it by valid statutes or by the New York State Constitution. Mandamus has never been available in election cases to test the validity of an election or the title to office. For the court to order a new election under article 78 would be to deprive the winning candidates of the offices to which they have been elected. Where an election has been held and the right of the successful candidate to office is challenged, there is no other remedy except that of an action of quo warranto.

From earliest times the legal remedy for trying title to office was by writ of quo warranto (3 Fiero on Particular Actions and Proceedings, p. 2733). It would seem that the procedure is still the proper one (*Matter of Carson*, 164 Misc. 945, 949, affd. 254 App. Div. 801). No other form of relief is to be found either in the original powers of the court, or in any additional constitutional powers given to it. No authority has been found for any other form of procedure, and where the Legislature did seek to give a contestant the right to a summary proceeding to recanvass the votes which would have deprived the successful candidate of a jury trial, the Court of Appeals declared the act

unconstitutional. (*Matter of Metz* v. *Maddox,* 189 N Y. 460.)

These successful candidates are entitled to the office each has won at a duly constituted election unless they are unseated in a quo warranto action. The right to a jury trial has always existed in cases to determine who is entitled to public office. The rule is best expressed by the Court of Appeals in considering the constitutionality of chapter 538 of the Laws of 1907, providing for a judicial recanvass which the court held was a judicial determination of title to office. It held the act unconstitutional. The opinion states (p. 469): " But the fatal objection to the constitutionality of the statute, regarded from this point of view, is that it deprives McClellan of his right to a trial by jury. * * * That actions to determine the title to public office were always, in this state and in England before our independence, triable before a jury is common knowledge."

It seems clear that article 78 does not provide any summary procedure for depriving a successful candidate of his office. If that were the purpose of the statute, then it would be clearly unconstitutional, for it would take away the candidate's right to have his title to office tested at a trial before a jury.

In support of their contention that article 78 is applicable here, petitioners rely upon several cases. *People ex rel. Hirsh* v. *Wood* (148 N. Y. 142), is certainly not applicable. As petitioners state, it is cited to show the " questions avoided by the Court of Appeals ", but those questions concerned the canvass of ballots. There is nothing in it which authorizes mandamus to compel a new election, and later cases have shown that these questions were answered against the petitioners' contentions. Another case cited is *Matter of Ingamells* v. *Bd. of Elections of Owego Co.* (259 App. Div. 36, 39), but that case itself shows that " the remedy of a candidate, who deems himself aggrieved by such a discrepancy shown on the canvass from the machine, is by an action to test the title to the office." The case of *Matter of Bonacker* v. *Clark* (254 App. Div. 801), does not authorize any new election. As a matter of fact, it involved the same election contest as *Matter of Carson* (164 Misc. 945, affd. 254 App. Div. 801, *supra*), which states expressly that an action of quo warranto is the proper remedy. Some stress seems to be put upon *Matter of Creedon* (264 N. Y. 40), but any statements in that case as to any statutory authority to interfere with elections beyond that contained in the Election Law are thrust aside by the Court of Appeals in *Matter of Hogan* v. *Supreme Court* (281 N. Y. 572, *supra*), as not being the law of this State.

As has been pointed out, mandamus will only lie in election cases to direct the performance of some specific ministerial duty (*People ex rel. Kelly* v. *Common Council,* 77 N. Y. 503, *supra; Matter of Smith* v. *Wenzel,* 171 App. Div. 123, affd. 216 N. Y. 421; *People ex rel. Henness* v. *Douglass,* 142 App. Div. 224). In *Matter of Smith* v. *Wenzel* (*supra*) the rule as to the application of mandamus to election cases is stated as follows (p. 125): " I need not stop to discuss in detail the various provisions of the Election Law (Consol. Laws, chap. 17 [Laws of 1909, chap. 22], as amd.) for reviewing the acts of election officials. It is enough to say that there is nothing in that law, or any other, as I think, to prevent compelling election officers by mandamus to perform ministerial or clerical acts such as are directed by the writ to be done in this matter. The inspectors are not required to recount the votes. The count is correct and was correctly recorded by the machine. The omission of duty is the failure of the election officers to record and certify that result. Such an act is in no sense judicial and may be compelled by mandamus although the Election Law does not specifically so provide." Petitioners here are seeking to set aside one election and to have a new one directed. Clearly, this is not a ministerial act, and article 78 therefore does not apply.

The Supreme Court is now asked to assume authority which it never had. Petitioners contend that the court has inherent power to summarily determine that an election is not valid and to direct a new one. In *Matter of Tamney* v. *Atkins* (209 N. Y. 202), where a writ of mandamus was brought to direct the inspectors of election to record ballots as valid which had been returned void, it was held that the court had no inherent power to grant it. The writ of mandamus was then substantially the same as the present order of mandamus under article 78 of the Civil Practice Act. The Court of Appeals in that case said (p. 206): " It is well settled that this proceeding may not be entertained by virtue of any inherent powers of the court, but must find authorization and support in the express provisions of the statute ". To the same effect are the cases of *Matter of Oliver,* 234 App. Div. 170; *Matter of Carson,* 164 Misc. 945, *supra; Aurelio* v. *Cohen,* 44 N. Y. S. 2d 145, 147, affd. *sub nom. Matter of Aurelio* v. *Cohen,* 266 App. Div. 603, affd. 291 N. Y. 645.) Nor has equity any jurisdiction concerning an election result even if it may be classed as void. (*Schieffelin* v. *Komfort,* 212 N. Y. 520.) In that case the Court of Appeals stated (p. 535): " It is the settled law in this state that equity has no jurisdiction over contests for office even if the election is claimed

to be void. Parties aggrieved are required to assert their rights in proceedings provided by statute or in actions at law.''

It thus appears that the only legal action available to petitioners is quo warranto (*Matter of Metz* v. *Maddox,* 189 N. Y. 460, *supra*); and that equity has no jurisdiction, so that nowhere is there any power in this court to summarily pass upon an election contest after the polls have been closed and the votes counted.

The court is urged to grant this application because it is claimed that an undetermined number of voters have been disfranchised as to the office in question. The moving parties quote from *Matter of Creedon* (264 N. Y. 40, *supra*), where the following language is used (p. 43): '' The statute gives the courts no power to disfranchise a single voter and certainly no power to disfranchise the voters of whole election districts.'' Certainly depriving a single voter of the exercise of his right to vote for any candidate is a most serious matter. But there is no disfranchising here under the provisions of the Election Law. When a voting machine does not function so as to register the will of the voter, the law gives the voter the right to register his vote by paper ballot. Section 261 of the Election Law provides in part: '' If any voting machine being used in any election shall become out of order during such election, it shall if possible be repaired or another machine substituted as promptly as possible, but in case such repair or substitution cannot be made, paper ballots, printed or written, and of any suitable form, may be used for the taking of votes, and for such purpose the reduced sample ballots may be employed.'' The only reasonable interpretation of this statute is that paper ballots may be used by a voter when a machine is out of order for any appreciable length of time. The petitioners assert that some of the machines were never put in order and many not until after the greater part of the time for voting had expired. To interpret the section to mean that a voter would have to wait at the polls all day or a greater part thereof until repairs were made is unreasonable. It must be held therefore that there has been no disfranchising of voters. Any voter who wished to cast his votes for these offices vertically could have called the attention of the officials to the condition of the machine. If it were not repaired or replaced within a reasonable time, then a paper ballot should have been demanded and given him. There is no such instance called to this court's attention, and it follows that no voter was disfranchised.

The petitioners claim that they have been grievously harmed by the failure of the election officers to properly adjust the machines. Because of that they seek a new election, but it must be borne in mind that the original petition herein is made by the candidates of the Republican Party. The chairman of their party could have avoided the condition whereby no vertical voting for the candidates for Municipal Court Justices was possible, by inspecting the voting machines prior to election day (Election Law, § 251).

Even if the law permitted a new election and such failure of itself might not be considered fatal to this application, still in view of the other facts revealed upon this motion, there is no basis for any relief.

Assuming that this court has the power to direct a new election, it would seem that to do so would be a futile act, for the results would probably be the same. Our courts deal in probabilities and not possibilities. As stated by Judge LEHMAN in discussing the power of courts to act: " They cannot act on conjecture, but, as in all other matters presented to them, they may act on logical inferences based on human probabilities." (*Matter of Creedon,* 264 N. Y. 40, 43, *supra.*)

Applying that test, we find that the Republican candidates in this court district polled approximately 14% of the votes, and that their candidates for borough president and district attorney received approximately 13.3% and 14% respectively; that the American Labor Party candidates polled approximately 24% of the vote, and that their candidates for borough president and district attorney received approximately 26% and 23.8% respectively; that the Democratic candidates polled approximately 49% of the votes and that their candidates for borough president and district attorney received approximately 49% and 51% of the votes. The similarity in the percentages leads inescapably to the conclusion that petitioners received what may be described as the normal vote of their party in this election. No proof was offered of the personal popularity or unpopularity of any of the candidates. To indulge in such possibilities would indeed be acting on conjecture. It is apparent on the basis of the foregoing percentage figures, that the defect in the machines did not bring about the defeat of any of petitioners, or that the result would have differed if the machines had functioned properly. The situation is similar to that which existed in *Matter of Coughlin* (137 App. Div 283, 285, affd. 198 N. Y. 613), where the court said: " If upon the application itself it appears reasonably clear that the unlawful acts complained

of could not have affected the result of the election, and at most only served to swell the apparent majority of the successful candidate, a case is not presented in which the court is bound to act.'' In the present case the pluralities of the Democratic candidates are so great and the proof so strong that the voting in the general election was along party lines, that it may be said here as in the *Coughlin* case (*supra,* p. 285), '' that the unlawful acts complained of could not have affected the result of the election ''.

Then again it must be remembered that the people have voted at a general election. It is common knowledge that a much larger number of persons vote at a general election than at a special election. The successful candidates were those of the party whose titular head was elected mayor and whose city-wide, borough and county candidates were elected by large pluralities. The candidacy of these men evidently induced many voters to vote for the rest of the Democratic ticket, including these justices. Those advantages will be denied them in a new and special election. The candidates are not responsible for the condition of the machines. The failure of the machines to function properly apparently resulted from some carelessness or lack of supervision on the part of the officials or employees of the Board of Elections who were charged by statute with the duty of seeing that the machines were properly prepared for voting. Certainly the successful candidates should not suffer because of this mistake. If the court were to order a special election, it would work an apparent injustice, not only upon the voters of the judicial district, but upon these candidates who were elected by overwhelming pluralities.

There is no merit to any of the petitioners' contentions. Under existing law, this court has no power to do what is asked. The papers establish that even if the court had such power, it should not exercise it on the facts presented as the respondent justices were properly elected and the errors complained of did not affect the result.

As far as the injunctive relief is concerned, these candidates have been elected to office and are entitled to certificates of election. The application for an order restraining the commissioners from issuing certificates of election to the successful candidates is denied.

Motion is in all respects denied.