Harold Tessler, J.
This is a proceeding pursuant to subdivision 2 of section 330 of the Election Law for an order directing that a new primary election be held for the party positions of (1) Republican State Committeeman from the Eighth Assembly District, Queens County, and (2) Republican County Committeeman from various election districts in the Eighth Assembly *752 District, Queens County; and (3) for the Republican nomination for the public office of Member of Assembly from the same Eighth Assembly District, Queens County.
The court will first concern itself with the elections for State Committeeman and Assemblyman. Petitioner Vincent L. Leibell, Jr., and respondent Robert E. Barnes opposed each other for State Committeeman and petitioner Joseph Tanenbaum and respondent John Di Leonardo were opponents for the Republican nomination for Member of Assembly in the primary election held on September 6, 1962.
There is little or no dispute about the facts. It appears that Barnes was elected over Leibell by a margin of 999 votes and Di Leonardo was elected over Tanenbaum by 1,073 votes; that in the 44th Election District the names of Barnes and Di Leonardo appeared on both lines 1 and 2 of the election machine and that the names of Leibell and Tanenbaum did not anywhere appear on the machine, although they were supposed to be listed on line 2; that in the 66th, 67th, 68th and 69th Election Districts no names of any kind or description appeared anywhere on the machines — said machines being completely blank; that in the 70th and 71st Election Districts, although the names of the contesting candidates properly appeared on the machines, only a total of 8 and 4 votes respectively were recorded as cast; that in the 72d and 79th Election Districts, although the names of the candidates were properly placed on the machines, for some unknown reason the polls were not opened and the machines were not made available to the electorate until 8:00 p.m.; that in the 89th Election District, although the names of the candidates were on the machine, again for some unknown reason no votes were recorded as being cast. (It should be noted that in this Election District there is a total of only 8 enrolled Republican voters.) In addition to the foregoing, there is some testimony from the records of the Board of Elections that in several (3 or 4) other election districts there were some complaints about minor irregularities which were repaired within a couple of hours after the polls opened at 3:00 p.m.
No fraud is claimed or proven by the petitioners.
It is the petitioners’ contention that the foregoing irregularities constituted such a permeation of the primary election as to render it impossible to determine who rightfully was nominated or elected and for this reason, pursuant to the statute, they seek a new election. Petitioners contend that by reason of these irregularities they were deprived of their legal right to a fair and free election and that such irregularities were destructive of petitioners’ legal rights. In addition, they contend that the *753 further irregularity in failing to list certain County Committee candidates on the machine in certain other election districts further deprived them of their legal rights and affected the election to their detriment.
It is basic that the court has no power to set aside an election simply because a candidate may be “ aggrieved ” or because a candidate or one or more voters were deprived of a legal right by reason of some irregularity or other defect in the voting process. It is clear that the court is empowered to act only when such irregularities as may have existed could have affected the result and because of such irregularities it is impossible to determine who was rightfully elected or nominated. (Matter of McGuinness v. De Sapio, 9 A D 2d 65.) Further, as stated in Matter of Badillo v. Santangelo (15 A D 2d 341, 342): “ An election will not be overturned upon a mere mathematical possibility that the results could have been changed, when the probabilities all combine to repel any such conclusion (Matter of McGuinness v. De Sapio, 9 A D 2d 65). Neither the statute nor this court’s opinion in the McGuinness case projects such a strained and unrealistic formula to the practical affairs of politics.”
Analyzing the irregularities, we find that in one election district (44th Election Dist.) the petitioners’ names were not on the machines and consequently the electorate could not vote for them; in four others (66th, 67th, 68th and 69th) the petitioners and respondents were jointly affected by the failure of the machines to carry any names whatsoever; and three other districts (70th, 71st and 89th) recorded a total of only 12 votes; in two others (72d and 79th) the electorate could only vote from 8:00 p.m. to the closing of the polls at 10:00 p.m.
It must be noted that in only one of the afore-mentioned districts can it be fairly concluded that the petitioners were the sole recipients of a handicap. In the remaining nine there is nothing in the evidence to indicate that the respondents were in any way responsible for the irregularities or that respondents’ right were not equally prejudiced.
The figures contained in the record indicate a total Republican enrollment in the Eighth Assembly District of 24,305 for 93 election districts. The 10 districts in which substantial irregularities were shown to exist have a total Republican enrollment of 2,365. A total of 3,469 actually voted in the primary election. It follows that approximately 16% of those eligible actually voted in the 83 districts free from irregularities.
In the five election districts where petitioners’ names were either omitted from the machines or the machines were a complete blank, there is a total Republican enrollment of 1,488. *754 Following the established performance of the voters and taking 16% of that figure, namely 238 votes, and adding all of them to the actual vote received by the petitioners, the conclusion is inescapable that this would still fall far short of changing the result.
Continuing and taking the second group of five election districts (70th, 71st, 72d, 79th and 89th), where petitioners’ names were on the machine but the previously described irregularities occurred, we find a total Republican enrollment of 877. Following the same formula and assigning the same probabilities to these districts as was established by the performance of the voters throughout the area, we would add 16% of this total enrollment, to wit 140 votes, and assuming all of them voted for the petitioners, it is again obvious that this figure, even when added to the previous cumulative total, would not change the result.
In view of the actual recorded result which rendered Barnes and Di Leonardo the victors by 999 and 1,073 votes respectively, it is of course most improbable that Leibell and Tanenbaum would have received the entire 16% of the electorate who actually voted in the 10 election districts. There is no logical reason to believe that more than 16% of the voters would have turned out in these 10 districts, but with the existing figures, if as much as 40% voted and all of them added to petitioners’ recorded votes, the result would remain unchanged.
Looking at the existing situation from another view, the conclusion is inescapable that the result could not have been changed by the alleged irregularities. Out of the total of 93 election districts comprising the Eighth Assembly District, 83 are free from alleged irregularities of any substance. The record indicates that the petitioners, Leibell and Tanenbaum, received a total of 1,187 and 1,134 votes respectively, each, therefore, averaging approximately 14 votes per district. These totals include the small number of votes petitioners apparently received in the 10 “ irregular” districts. Keeping in mind that Leibell lost by 999 votes and Tanenbaum by 1,073 votes, it is plain that in order to simply reach the totals achieved by Barnes and Di Leonardo in the election, petitioners would of necessity have had to obtain an average of 100 votes in each of the 10 election districts complained of. This of course carries with it the necessary corollary that respondents Barnes and Di Leonardo would have received no votes in these 10 districts. It hardly needs saying that for every vote the latter received petitioners ’ burden would be that much greater. From the actual accomplishment of the petitioners in the 83 election districts, and noting that in the same *755 83 districts an average of only 41 voters per district turned out for both sides, it is obvious that there is not only little or no probability of petitioners’ averaging 100 or more votes per district, but actually the rhyme and reason in political affairs of this kind make it beyond the realm of possibility.
Hence, it is clear that even by stretching the probabilities almost to the point of rendering them impossibilities, it is obvious that the irregularities complained of could in no way have affected the result of the election, Accordingly, the court is constrained to find that the petitioners, Leibell and Tanenbaum, have failed to prove that the irregularities either could have changed the result of the election or that it is impossible to determine who was rightfully elected or nominated.
I find that the irregularities alleged to have existed in districts other than those mentioned above were of a minor nature, all of which were apparently corrected within a reasonably short time after their discovery and they had little or no effect on the results of the election.
With reference to petitioners’ claim that they were deprived of their legal rights to their detriment by reason of the failure to list them on the machines in several districts with their County Committee candidates, it is of little substance and cannot, by any stretch of the mind or reason, be considered to be a factor in changing the result.
For all of the foregoing, the petitions of Leibell and Tanenbaum are dismissed.
The second portion of this proceeding is concerned with contesting candidates for the party position of County Committeeman in the 15th, 17th, 25th, 29th, 35th, 51st and 72d Election Districts.
In the 25th, 35th and 51st .Election Districts, the candidates who ran on the same line with petitioners Leibell and Tanenbaum are not petitioners in this proceeding. This being in the nature of an adversary proceeding, this court can only entertain it when instituted by an aggrieved candidate. (See Matter of McGuinness v. De Sapio, 9 A D 2d 65, 72, 73, supra.) Accordingly, no consideration will be given to the alleged irregularities in connection with the contests in those election districts.
In connection with the 72d Election District, there is no dispute about the fact that the petitioners Theodore Klehr and Suzanne D, Pierce were properly listed on the voting machine along with their opponents, but that the polling place in this district did not open for voting purposes until 8:00 p,m. This is the sole irregularity urged by the petitioners in their quest for a new election. There is no proof of any kind before the court that *756 anything else in the way of irregular procedure or behavior occurred during the two hours that voting took place in this district. There is nothing in the proof to indicate that the result in this curtailed election was in any way affected or changed by this shortened period for voting or that it is impossible to determine who was rightfully elected. Accordingly, the petitions of Theodore Klehr and Suzanne D. Pierce are dismissed.
As to the 15th, 17th and 29th Election Districts, it is conceded that the machines in each of these districts bore no names for either side for the party position of County Committeeman. It is further conceded by both sides that the petitioners as well as the respondents had all properly and legally qualified for the election and were entitled to be listed on the machine as candidates for the party position of County Committeeman in each of these districts.
The proof indicates that actually there was no election in each of these districts for that party position by reason of the failure to list any of the candidates on the machine.
Section 13 of the Election Law provides as follows: ‘ ‘ Members of the state and county committees shall be elected at primary elections as herein provided. * * * Members of both committees shall be elected at fall primaries * * *. The members of both committees shall hold office until the election of their successors.”
The court deems the foregoing to be a legal mandate that a bona fide election of the members of the County Committee shall be held, and further that the candidates who are properly and legally qualified to stand for such election shall not be deprived of the opportunity to be elected as mandated by the statute. It is obvious in the situation before us that no such election was ever held and consequently there is no rightful winner.
The respondents urge that a new election should not be ordered herein on the grounds (1) that subdivision 1 of section 17 of the Election Law dealing with vacancies in the County Committee applies; and (2) that section 260 of the Election Law dealing with repairs of election machines and the use of paper ballots should be applied to the instant situation.
Subdivision 1 of section 17 provides, in pertinent part, as follows: “ In case of death, declination, disqualification, removal from district of removal from office of a member of the state or county committee, or the failure to elect a member, as by reason of a tie vote, the vacancy created thereby shall be filled by the remaining members of the committee by the selection of an enrolled voter of the party qualified for election from the unit of representation as to which such vacancy shall have occurred.”
*757 Respondents urge that the language “ or the failure to elect a member, as by reason of a tie vote ” warrants the application of this statute for the filling of the “ vacancy ’ ’ which exists herein. I cannot accept this contention. The vacancy, or, as it should more properly be termed, the void, is in its very inception and nature an illegal one created by the complete failure of the elective process as mandated by the statute. It is my view that a vacancy such as exists herein is not one within the intention and contemplation of the afore-mentioned statute. To permit the application of the statute in cases where there has been no election whatever would destroy the very basis of our democratic and republican principles of government, with all that they imply.
Section 260 of the Election Law provides as follows: “ If the official ballots for an election district at which a voting machine is to be used, required to be furnished by or to any * * * board, shall not be delivered at the time required, or if after delivery shall be lost, destroyed or stolen * *- * the election inspectors of such district, shall cause other ballots to be prepared, printed or written, as nearly in the form of the official ballots as practicable, and the inspectors shall cause the ballots so substituted to be used at the election in the same manner, as near as may be, as the official ballots. Such ballots so substituted shall be known as unofficial ballots. If any voting machine being used in any election shall become out of order during such election, it shall if possible be repaired or another machine substituted as promptly as possible, but in case such repair or substitution cannot be made, paper ballots, printed or written, and of any suitable form, may be used for the taking of votes, and for such purpose the reduced sample ballots may be employed.”
The respondents argue in their memorandum of law that “ The cases have held that in the event that a voting machine fails to function and has not been repaired in a reasonable period of time, then a paper ballot should be demanded and given to the voter. Thus, it has been held that in such an instance, the voter is not disenfranchised by the inoperation of the voting machines but has the right to demand a paper ballot. ’ ’ (Matter of Ginsberg v. Heffernan, 186 Misc. 1029.)
1 ‘ The alleged irregularities in the instant case result from the voting machines being out of order. The candidates are not responsible for the failure of the machines to be in proper working order. The respondents were likewise adversely affected to the same degree as Petitioners by the inoperation of the voting machines. ’ ’
*758 In the court’s view this argument has no validity in the case before us. The statute places the obligation to furnish paper ballots squarely on the election officials, and absent any proof that such paper ballots were made available and offered to the voters, the statute cannot be used as a vehicle for the disenfranchisement of the electorate. Bespondents could have offered such proof upon the hearing, but did not do so and there is nothing in the record to indicate that any paper ballots were made available at any time for voting in this County Committee contest. I find no sanction in law for the proposition that the voter is under any legal requirement to request a paper ballot and, should he not do so, has surrendered or waived his right to vote. Furthermore, the petitioners as well as the respondents were legally qualified candidates for this party position and as such have a legal right to stand for election. This basic and fundamental right was denied all of them — petitioners and respondents alike — by the complete breakdown of the elective process.
The cases cited by the respondents aré not referable to the present situation. Particularly is this so in Matter of Ginsberg v. Hefernan (186 Misc. 1029). In that case voters were prevented from casting their vote for various periods of time for the office of Municipal Court Justice because of some mechanical trouble with the pins in the back of the voting machines. This trouble was repaired after being called to the attention of the election officials, and in fact voting took place and a very substantial number of votes, running into the thousands, were cast in the election.
Accordingly, I find that by reason of the irregularity in connection with the voting machines in each of the 15th, 17th and 29th Election Districts no election for the party position of County Committeeman was held in those districts as required by law, and it is therefore impossible to determine which of the opposing candidates is entitled to be elected to that position. Consistent with the foregoing, the court directs the Board of Elections, with due speed, to hold a special primary election for the party position of County Committeeman in the 15th, 17th and 29th Election Districts of the Eighth Assembly District of Queens County, and that such election shall be held between those contesting candidates who have heretofore duly qualified pursuant to law for the primary election held on September 6,1962, and who should have appeared on the voting machines in said election.
It is further directed that the organizational meeting of the Members of the Bepublican County Committee of the Eighth *759 Assembly District of Queens County as required in the Election Law and the by-laws of the Queens County Republican Committee, heretofore adjourned from September 14 to September 26, 1962, by reason of the pendency of this proceeding, be held within 10 days after the entry of the order herein.