Donald H. Mead, J.
Petitioner herein was a candidate for the office of Trustee in the Village of Minoa at an election held on March 16, 1965. He was not elected, and now petitions the court for an order declaring him to be elected or in the alternative, directing a new election for the office of Village Trustee. The respondents, Edward Kalin, Willard B. Bockwood, Jesse Pooler, Thomas Nichols and Donald Peterelli, are the Mayor and Trustees of the Village of Minoa and as such constitute the Commissioners of Election of said village. The candidates for Trustee were petitioner and respondents Pooler, Bockwood and Caswell, and the order of appearance of the candidates on the single voting machine used at said election was as follows:
Column 2 Column 3
People’s Party Jesse Pooler Willard B. Bockwood
Independent Party Jesse Pooler Willard B. Bockwood
Progressive Party James Byan Kenneth Caswell
The results of the election, according to the voting machine totals and the official canvass, were as follows:
Caswell ...................... 247
Bockwood .................... 240
Byan......................... 238
Pooler........................ 235
Following the election, the respondents Caswell and Bock-wood were declared the elected Trustees. It is the contention of petitioner that the voting machine was prepared and set up in such manner as to deny to the voters a free choice of any two candidates for the offices of Trustee. In support of the petition are the affidavits of 10 registered voters who participated and voted in the election to the effect that they had cast their respective votes for Jesse Pooler in Column 2 and that thereafter they attempted to cast a ballot in favor of James Byan, the petitioner, in Column 2 but were unable to do so because the machine lever over petitioner’s name had locked and could not be depressed. The affidavits further alleged that the affiants thereupon either cast a ballot in the third column for the office of Trustee or voted for no other candidate for the office. Also offered in support of the petition was an affidavit of the voting machine custodian which alleges, “ that the voting machine was set up so that it was impossible to cast more than one ballot in the same column for the election of Trustee, which could possibly preclude a *29 voter from casting their ballot for the two trustees of their choice.” In an affidavit of the Village Cleric, who served as Chairman of the Board of Inspectors, submitted in opposition to the petition, it is alleged that ‘ ‘ all of the trustees were listed in a single box, but in two columns above which was the instruction ‘ vote for two’.” The respondents, upon oral argument, contended that when the question of the faulty setup of the machine was first raised on election evening following the election, upon interrogation, the machine custodian stated that the machine was so set up as to permit a free choice of any two of the four candidates for trustee. That no one during the course of the election called the alleged condition of the machine to the attention of the inspectors nor were any complaints made to said inspectors concerning the inability on the part of any voter to east ballots for any two of the listed candidates for the offices of Village Trustee. Further, that any information concerning the alleged mechanical defects of the machine is hearsay, but since the machine is presently locked with the keys thereto in the possession of the custodian and in the same condition as it was following the election, respondents urged the court to order a physical examination and testing of the machine in question. Upon stipulation of the parties the court thereupon, pursuant to section 333 of the Election Law, ordered a physical inspection and testing of the voting machine, in the presence of all interested parties or their representatives, and directed that a report of said examination and inspection be returned to the court. On May 17, 1965 there was filed with the court a stipulated report, dated May 6, 1965, of the facts disclosed upon the physical inspection of the voting machine had on April 15, 1965, wherein it was stipulated by the attorneys for the respective parties that if proof were taken regarding the results of said inspection it would disclose the following:
“ 1. On April 15, 1965 at 8:00 p.m., Frank Mapstone, the custodian of the voting machine used in the said election, conducted an examination in the presence of all of the parties hereto, or their legal representatives.
“ 2. The examination disclosed that one (1) vote could be cast for the office of Trustee in Column 2; after a lever was depressed in that column, no other lever in the same column could be depressed without releasing or raising the first lever so depressed.
“ 3. Two (2) votes could be east in any row in Column 3. irrespective of what vote, if any, was east in Column 2.
*30 “ 4. Trustee Candidate Pooler’s name appeared in two (2) rows in Column 2; Trustee Candidate Ryan’s name appeared in one (1) row in Column 2; Trustee Candidate Rockwood’s name appeared in two (2) rows in Column 3; Trustee Candidate Caswell’s name appeared in one (1) row in Column 3.
“5. Pour hundred and eighty-eight (488) voters entered the polling booth; four hundred and eighty-five (485) votes were cast in Column 1, the Mayor’s contest; four hundred and seventy-three (473) were cast in Column 2 for Trustee; and four hundred and eighty-seven (487) in Column 3 for Trustee.”
While the moving papers did not specifically state, it was generally conceded by petitioner, upon the argument of the motion, that the application was based on article 14 of the Election Law.
Section 248 (subd. 1) of the Election Law provides: “The machine shall be so adjusted that when one or more knobs, equaling the total number of persons to be elected to that office shall have been operated, all other knobs used in connection with that office shall be thereby locked.”
Section 53-a of the Village Law gave the court the same review of village elections and registration therefor as is provided in article 14 of the Election Law. Section 69 of the Village Law provided that the provisions of the Election Law shall apply to all elections held under the provisions of said article and not inconsistent therewith.
It is clear that the defects in the voting machine, as revealed in paragraphs 2 and 3 of the stipulated report of inspection filed with the court, prevented a complete freedom of choice in the balloting for two candidates for the respective offices of Village Trustee. With the closeness of the election it is conceivable that this fact may have ■ influenced the results. However, the court is of the opinion that it has no authority under the Election Law-to grant the relief sought by petitioner. Interestingly, it should be observed that no complaint concerning the setup or mechanical operation of the machine was made to anyone in authority during the voting period on the day of election.
Section 330 of the Election Law gives this court jurisdiction to summarily determine any question of law or fact as to any of the subjects enumerated in said section. There are set forth, in the section, seven subdivisions listing the subject matters which fall within the purview of such jurisdiction. Subdivision 2 thereof empowers the court to direct the holding of a new primary election or the reassembling of any convention where the same “ has been characterized by such frauds or irregulari *31 ties as to render impossible a determination as to who rightfully was nominated or elected”. However, the matter before the court does not concern a convention or primary election and a reading of section 330 does not reveal any power to order a new general election. Inasmuch as the court’s jurisdiction and authority is purely statutory there can be no judicial extension thereof. As was stated in Matter of Hogan v. Supreme Court (281 N. Y. 572, 576 [1939]): “Any extension of the summary remedy authorized by that section [330] must be made by the Legislature.” Nor may it be successfully argued here that the failure of the defective machine to register a vote sought to be cast for petitioner resulted in and constituted a ‘ ‘ wholly blank ballot ” within the meaning of that phrase as used in subdivision 4 of the section so as to empower the court to take testimony of electors to establish the number of votes sought to be cast for petitioner or to correct any error in the canvass of such ballots (Matter of Hogan v. Supreme Court, supra, p. 575). In any event, on the face of the petition, no question is presented under subdivision 4 of section 330 of which this court has jurisdiction. Likewise, in Matter of Mullen v. Heffernan (193 Misc. 334, affd. 274 App. Div. 972, affd. 298 N. Y. 785) where it was contended that the court had jurisdiction to summarily determine any question of law or fact arising as to “ the canvass of returns ” by a City Board of Canvassers and to ‘ ‘ direct a recanvass or the correction of an error ” therein (subd. 5) where it was claimed that certain voting machines were not functioning properly, the court stated (p. 338): “ But here there is no issue as to what the canvass or recanvass actually shows. The count on each voting machine is indicated thereon. It is evidenced not only by the returns made by the inspectors of election of each district, but by the tabulation or canvass made by the board of elections. In any event, the duty of canvassing or recanvassing the votes is purely ministerial, and this court has no jurisdiction in a proceeding under either article 14 of the Election Law or article 78 of the Civil Practice Act, except to compel the election officials to perform their duties in that respect and to correct obvious errors in the canvass (see Matter of Oliver, 234 App. Div. 170, 175; Matter of Bonacker v. Chuckrow, 166 Misc. 171, 176; Matter of Ginsberg v. Heffernan, 186 Misc. 1029, 1034-1035).”
In Matter of Ginsberg v. Heffernan (186 Misc. 1029 [1945]), unsuccessful candidates for Municipal Court Justice, Borough of The Bronx, sought to restrain the Commissioners of Elections of the City of New York from issuing certificates of election to successful candidates and asked the court to declare the election invalid and direct a new election. In that election, two Justices *32 were to be elected and the eight candidates for the positions were listed in Columns 10 and 11 on the voting machines. The machines were set up in such manner that it was impossible to vote vertically for two candidates for Municipal Court Justice in the same column. The defect was discovered early in the day and adjusted. The court held there was no authority under either article 14 of the Election Law or then article 78 of the Civil Practice Act to grant any of the relief requested, and concluded that quo warranto appears to be the only legal remedy available to petitioners.
In Matter of Carson (164 Misc. 945, affd. 254 App. Div. 801) the petitioner, a Democratic candidate for the office of Supervisor in the City of Rensselaer, claimed that because of the mechanical failure of the registering mechanism in a certain voting machine, not all of the votes cast for him were indicated by the counter. The petitioner sought an order in pursuance of section 333 of the Election Law for a mechanical examination of the machine and urged that if the examination disclosed a failure to fully record the votes cast for him, that the court take proof by affidavit or by an oral examination of the voters as to the number of votes cast for petitioner and to thereupon direct a recanvass to be made in accordance with the findings reached upon such proof. The court, in granting an order directing the mechanical examination of the machine but denying the balance of the motion, and commenting on section 330 of the Election Law, stated (pp. 948-949):
“ There is, of course, power to correct discrepancies due to clerical mistakes in returning the vote, and by mandamus to compel such correction by the canvassers (Matter of Smith v. Wenzel, 216 N. Y. 421, 426), but here the discrepancy does not arise from any error of the inspectors in recording the vote which could be ascertainable or corrected by an examination of the counters on the machine, but the actual result is dependent upon proof which will supply the deficiencies of the machine. In this case, such proof seems available only by showing how the electors voted.
“ Quo warranto or a similar action admitting of a plenary examination into the actual votes cast for the office of supervisor in the district in question seems to be the remedy of the petitioner. (People ex rel. Deister v. Wintermute, 194 N. Y. 99.) There, upon mechanical failure of the voting machine properly to record the vote, it was held in an action in quo warranto that proof of the actual vote cast by electors was available to the relator. A summary determination of a question of this kind is not within the jurisdiction of the court. The summary jurisdic *33 lion of the Supreme Court in election cases is not inherent. It rests upon the express provisions of the Election Law and it finds its limitations in that statute (Matter of Tamney v. Atkins, 209 N. Y. 202, 206.)”
In Matter of Oster v. Village of Jordan (42 Misc 2d 432 [1964]) the petitioner, a write-in candidate, sought to have an election for Village Trustee voided because the machine was set up in such a manner as to make it impossible to write in the name of a candidate. The court held the summary jurisdiction of section 330 of the Election Law does not give the court power to void a general election, but that petitioner could test the matter by a quo warranto proceeding. Justice Cabdamone stated (p. 434): “Although this court determines that the applicant has no remedy under the summary provisions of the Election Law, it does not mean to suggest that the applicant has no remedy at all. The proper remedy here, where title to office is to be tested, is by a ‘ quo warranto ’ proceeding (Greene v. Knox, 175 N. Y. 432, 437; Matter of Ingamells v. Board of Elections of Oswego County, 259 App. Div. 36, 39; Executive Law, § 63-b) upon the disputable facts alleged in the affidavits. (Southard v. McGann [279 App. Div. 588].) Where there was a mechanical failure of a voting machine, 1 quo warranto ’ was held to be the proper remedy. (People ex rel. Deister v. Wintermute, 194 N. Y. 99; Matter of Carson, 164 Misc. 945.)”
Since this court is without authority to order a new general election, it follows that it has no power to declare the election of petitioner. For the reasons stated, petitioner’s motion is denied, without costs and without prejudice to the prosecution of such action or other proceeding by petitioner as he may be advised.