James H. Boomer, J.
Petitioners, unsuccessful candidates for the two offices of Councilmen in the Town of Williamson, bring an action for an injunction restraining the Board of Elections of Wayne County from certifying the successful candidates at the election held November 2,1971 as having been duly elected as Councilmen of the Town of Williamson. This motion is for a preliminary injunction pending the determination of the action.
The petitioners claim they are entitled to this relief because of an error made in the preparation of the voting machines. The names of the candidates for the two offices of Councilmen for four years appeared in columns 6 and 7 of the voting machines. The names of the two successful candidates appeared on row A of columns 6 and 7 and the names of the petitioners appeared on row B of those columns. The machines were prepared in .such a way that after one lever in column 6 was depressed the other lever in that column locked and after one lever in row 7 was depressed the other lever in that column locked. It was, therefore, impossible for any voter to vote for *156 both candidates in row 7 or both candidates in row 6, thus the voters could not vote for any two candidates for couneilmen. This, petitioner claims, made the election illegal and void.
Petitioners’ attorney concedes that the court is not given the power under section 330 of the Election Law to void a general election. This concession is compelled not only by the wording of section 330, but also by case law. See Matter of Ginsberg v. Heffernan (186 Misc. 1029) and Matter of Ryan v. Kalin (48 Misc 2d 27), where the same error in preparing the voting machines was made as here. The courts, in both cases, denied petitioners summary relief under section 330 of the Election Law. See, further, Matter of Oster v. Village of Jordan (42 Misc 2d 432) and Matter of Quinn v. Kehoe (61 Misc 2d 392).
Petitioners claim they are not requesting relief under section 330 but are asking here for a preliminary injunction in their action to permanently enjoin the election officials from certifying their opponents as the successful candidates. The court, however, has no equity powers in election cases (Schieffelin v. Komfort, 212 N. Y. 520). In the Schieffelin case the Court of Appeals stated (p. 535): “It is the settled law in this state that equity has no jurisdiction over contests of office even if the election is claimed to be void. Parties aggrieved are required to assert their rights in proceedings provided by statute or in actions at law.” “ It thus appears that the only legal action available to petitioner is quo warranto (Matter of Metz v. Maddox, 189 N. Y. 460, supra); and that equity has no jurisdiction ”. (Matter of Ginsberg v. Heffernan, 186 Misc. 1029, 1036-1037, supra.)
Petitioners’ counsel is mistaken in his reliance upon the case of Matter of Stella v. O’Rourke (58 Misc 2d 1041, affd. 31 A D 2d 798) as precedent for the relief he seeks. There, the ultimate relief sought was not a permanent injunction, but a recanvass of the votes under subdivision 5 of section 330 of the Election Law. Here, petitioners concede that the canvass was correct and they do not request a recanvass.
Petitioner argues that since the mistake of the election officials has caused grievous harm to the petitioners and has disenfranchised some of the voters who intended to vote for one of the petitioners but were unable to do so, the court, in the interest of justice, should devise a remedy, and the proper remedy requires the voiding of the election. This argument is without merit. Setting aside the election would disenfranchise the majority of the voters who voted for the successful candidates. Furthermore, any voter who voted for a candidate for Council *157 man in row A and desired to cast his second vote for a candidate on row B of the same column could have done so by requesting a paper ballot and there is no allegation that any voter made such request. Nor is there any showing that any voter was prevented from writing, in the space provided on the machine for write-in votes, the name of either of the petitioners. ‘ ‘ Therefore, it must follow that no elector was disenfranchised (Matter of Ginsberg v. Heffernan, supra, p. 1037).” (Matter of Quinn v. Kehoe, 61 Misc 2d 392, 396, supra.)
The claim of grievous harm to the petitioners does not warrant the creation of a new remedy; for the Legislature has, in the Election Law, provided sufficient opportunity for political parties and their candidates to protect against any such harm the petitioners claim befell them. Having provided these safeguards, the Legislature in its wisdom, did not see fit to give the court the power to void a general election .should both political parties and their candidates fail to exercise their rights and duties to see that the machine was properly prepared. As was said of another election, involving candidates of another party: ‘ ‘ The petitioners claim that they have been grievously harmed by the failure of the election officers to properly adjust the machines. Because of that they seek a new election, but it must also be borne in mind that the original petition herein is made by the candidates of the Republican Party. The chairman of their party could have avoided the condition whereby no vertical voting for the candidates for Municipal Court Justices was possible, by inspecting the voting machines prior to election day (Election Law, § 251 [now § 250]).” (Matter of Ginsberg v. Heffernan, 186 Misc. 1029, 1038, supra.)
In an attempt to provide fair elections free of fraud or undue advantage taken by one political party of the other, the Legislature has established in each county of the State bipartisan Boards of Elections (Election Law, § 30). In the County of Wayne the board consists of two Commissioners of Elections, one from each of the two major parties, each appointed by the chairman of his political party (Election Law, § 31). The employees of the Board of Elections are divided equally between representatives of the two major parties (Election Law, § 36). It is the duty of the bipartisan Board of Elections, acting through the custodians of the voting machines appointed by the board, to prepare the machines for the election (Election Law, § 250). It is the duty of each political party and of each of the candidates, through their representative to inspect the machines prior to the day of election to see that the machines are properly prepared (Election Law, § 250, subd. 2; § 256-a).
*158 There is no allegation here of any fraud or of unfair dealings on the part of one political party against the other; the only conclusion that can be drawn from petitioners’ allegations is that the election officials made an honest mistake. “ The failure of the machines to function properly apparently resulted from some carelessness or lack of supervision on the part of the officials or employees of the Board of Elections who were charged by statute with the duty of seeing that the machines were properly prepared for voting. Certainly the successful candidates should not suffer because of this mistake.” (Matter of Ginsberg v. Heffernan, 186 Misc. 1029, 1039, supra.)
Nor could the court, even if it had the power to void an election, do so under the facts of this case. There is no showing that the mistake of the election officials in preparing the machine, affected the result of the election. Petitioners have submitted to the court affidavits from voters each of whom states in identical language: “ That when I voted on that day, I was deprived of my right to vote for a candidate for councilman, four year term, because the voting machine would not accept my ballot on Bow B after I had voted on Bow A. ’ ’ Even if these affidavits are construed to mean that the affiants attempted to vote for one candidate on Bow B, but could not, these affidavits are not sufficient to show that the result of the election would be different had the affiants voted as they intended. There is no showing for which of the two candidates on Bow B the affiants intended to vote. Moreover, even if every one of the affiants intended to vote for the candidate on Bow B who received the greater number of votes of the two candidates on Bow B, and the court were to give effect to their votes as they had intended, the result of the election would still be the same. The number of affidavits submitted fall far short of the number necessary to give either candidate on Bow B a greater number of votes than either successful candidate on Bow A. The court must follow the “ essential principle of the elective system, that the will of the majority of the qualified electors shall determine the right to an elective office.” (People ex rel. Judson v. Thacher, 55 N. Y. 525, 535, quoted in People ex rel. Deister v. Wintermute, 194 N. Y. 99, 105.) Upon all of the papers submitted by the petitioners there is no showing that the will of the majority of the qualified voters has been frustrated. Since the petitioners have not shown a reasonable probability of ultimate success, the motion for a preliminary injunction must be denied.
“ As far as injunctive relief is concerned, these candidates [those on row A] have been elected to office and are entitled *159 to certificates of election. The application for an order restraining the commissioners from issuing certificates of election to the successful candidates is denied.” (Matter of Ginsberg v. Heffernan, 186 Misc. 1029, 1039, supra.) Respondent’s motion to vacate the temporary restraining order contained in the order to show cause initiating petitioners’ application is granted, provided, however, that the restraining order is continued only to and including December 7, 1971.
Petitioners’ attorney has requested that the names of the voters signing affidavits be not revealed and that their affidavits be sealed. Respondent’s attorney has not objected to the request and, therefore, I direct that these affidavits be sealed and shall be unsealed only on further court order.