OPINION OF THE COURT
Vincent R. Balletta, Jr., J.
This proceeding was commenced pursuant to CPLR article 4 by order to show cause by the petitioner Leonard B. Austin, the Democratic candidate for Supervisor of the Town of Oyster Bay, seeking an order declaring, inter alia, that certain conduct of the respondents is false and fraudulent.
The petitioner contends that various campaign signs and *531 literature which contain the word "return” with respect to Angelo Delligatti are false and fraudulent since Mr. Delligatti is not the incumbent Supervisor of the Town of Oyster Bay. He requests that this court order the removal of those signs or political advertisements which contain the word "return”, and grant a further order preventing the erection of additional signs or advertisements and the distribution of literature which contains the word "return”. In addition, he requests money damages "to pay for corrective political advertising.”
The respondents have raised as a threshold question the argument that the court has no jurisdiction in this matter since the petitioner has failed to make a complaint pursuant to the Fair Campaign Code (9 NYCRR 6201.1 et seq. [Code]), and section 3-106 of the Election Law, entitled "Fair campaign code”, which requires the State Board of Elections to adopt a Fair Campaign Code "setting forth ethical standards of conduct for persons, political parties and committees engaged in election campaigns” (§ 3-106 [1]). Among other things, subdivision (3) of section 3-106 provides: "The state board of elections, on its own initiative, or upon complaint or otherwise, may investigate any alleged violation of the fair campaign code and, in appropriate cases, may apply for an order, as provided in this article.”
In addition, section 3-102 of the Election Law states that "the state board of elections shall have the power and duty to:
"1. issue instructions and promulgate rules and regulations relating to the administration of the election process, election campaign practices and campaign financing practices consistent with the provisions of law”.
Pursuant to the terms and provisions of section 3-106, the State Board of Elections did adopt a "Fair Campaign Code” and established rules and regulations pertaining thereto (Rules of the State Board of Elections part 6201 [9 NYCRR]). Section 6201.1 of the Code requires that "No person, political party or committee during the course of any campaign * * * shall * * * engage in * * *
"(b) Political practices involving subversion or undermining of political parties or the electoral process including, but not limited to, the preparation or distribution of any fraudulent, forged or falsely identified writing”.
Section 6201.3 of the Code outlines the procedure to be *532 followed with respect to the initiation of a proceeding. A proceeding is commenced under the Fair Campaign Code when the New York State Board of Elections "receives a written complaint * * * alleging the commission or omission of acts, in violation of the code” or it "undertakes an investigation of an alleged violation of the code” on its own initiative. (9 NYCRR 6201.3 [a] [1] [i], [ii].)
Article 16 of the Election Law, entitled "Judicial Proceedings”, provides the statutory authority for judicial intervention.
Section 16-100 vests the Supreme Court with jurisdiction to summarily determine any question of law or fact arising as to any subject set forth in article 16, under the following circumstances:
1. Proceedings as to designations and nominations, primary elections, etc. (§ 16-102).
2. Proceedings as to form of ballot, party name, etc. (§ 16-104).
3. Proceedings as to the casting and canvassing of ballots (§ 16-106).
4. Proceedings as to registration and voting (§ 16-108).
5. Proceedings as to enrollment (§ 16-110).
6. Proceedings for examination or preservation of ballots (§ 16-112).
7. Proceedings to compel filing of statements or corrected statements of campaign receipts, expenditures and contributions (§ 16-114).
8. Proceedings to review removal of a committee member or officer (§ 16-118).
It is well settled that there exists no inherent power to extend judicial review of election matters beyond that set forth in the Election Law. This was so under former Election Law § 330 (Matter of Narel v Kerr, 22 AD2d 979 [3d Dept 1964]), and remains the rule under article 16. Further, any extension of the summary remedies provided by the Election Law must come from the Legislature. (Matter of Hogan v Supreme Ct., 281 NY 572 [1939].) There is a long line of cases which has taken the position that Special Term has no inherent powers in election proceedings — it has only those powers provided under the Election Law. (Matter of McGuinness v DeSapio, 9 AD2d 65 [1st Dept 1959].) The Supreme Court has no inherent power to expand judicial review of election mat *533 ters beyond that provided by statute. It has only such powers as are given by statute. (Matter of Corrigan v Board of Elections, 38 AD2d 825 [2d Dept 1972]; (Matter of Kranis v Monserrat, 63 Misc 2d 119 [Sup Ct, Kings County 1970]; Matter of Quinn v Keogh, 61 Misc 2d 392 [Sup Ct, Schenectady County 1969]; Matter of Oster, 42 Misc 2d 432 [Sup Ct, Onondaga County 1964]; Matter of Hanley v Creaser, 31 Misc 2d 1069 [Sup Ct, Washington County 1961].) ”[I]n election cases a court may only exercise the powers granted to it within the framework of the procedures prescribed by the statute. Under these circumstances, Special Term, having no proceeding before it brought pursuant to section 330 of the Election Law, was powerless to initiate a proceeding or treat the article 78 proceeding as such”. (Matter of Mansfield v Epstein, 5 NY2d 70, 74 [1958]; Matter of Kane v Republican County Comm., 17 AD2d 707 [2d Dept 1962], affd 12 NY2d 658; also see, Matter of Harwood v Meisser, 41 AD2d 531 [2d Dept 1973], affd 31 NY2d 1000.)
The petitioner contends that he is not required to exhaust his administrative remedies before applying to the courts for relief. He views the Fair Campaign Practice Act and the Code which has been established pursuant to legislative mandate as providing rights in addition to an application in the Supreme Court.
This court finds no merit to that argument. The Legislature mandated the Election Board to promulgate a Fair Campaign Code, and the mere fact that subdivision (3) of the enabling legislation provides that the Board “may investigate any alleged violation” does not give this petitioner the right to choose his forum.
In the event that the Board of Elections fails to investigate any complaint, or, further, fails to proceed in accordance with the rules and regulations promulgated by the Board, then an aggrieved party would have redress to the courts, but in the view of this court, an aggrieved party is required to make a complaint in the first instance to the Board of Elections under the Fair Campaign Code. (See, Matter of Marchi v Acito, 77 AD2d 118 [3d Dept 1980].) The specific authority vested in the courts, as previously outlined, and the cases cited with respect to the court’s inherent power, make clear the obligation of the aggrieved party to proceed administratively in the first instance.
There are many areas of the law where the Legislature has *534 indicated a strong public policy in favor of administrative proceedings prior to judicial review. Workers’ compensation is one such area that comes readily to mind. Thus, in O’Rourke v Long (41 NY2d 219, 221 [1976]), Judge Jasen, writing for the majority, wrote: "It is axiomatic that, as to an employer, where workmen’s compensation provides a remedy, the remedy that it provides, save for the rare case, is exclusive * * * The initial question to be resolved whenever a defense of workmen’s compensation is present is whether the plaintiff has a right to bring a plenary action. If the right to sue the employer has been stripped away by workmen’s compensation coverage, it is an arrogation of jurisdiction to consider a tort complaint on its merits.”
The court held that workers’ compensation was the exclusive remedy, and precluded the plaintiff from bringing an action to recover for damages.
Although there are vast differences between the Workers’ Compensation Law and the Election Law, it is clear that it was the legislative intent to repose in the Board of Elections the obligation to initially make determinations and that the exclusive remedy of the aggrieved party is to file an appropriate complaint with the Board. For instance, in the Marchi case cited above, the Appellate Division remitted the matter back to the State Board of Elections for further investigation of the petitioner’s complaint that his opponent had violated the Fair Campaign Code by distributing false and misleading campaign material.
The petitioner urges this court in any event to invoke its equity powers due to the fact that it would be impractical to make a complaint to the Election Board since Election Day is upon us. Basically, the petitioner asks this court to recognize that any decision made by the Election Board will come too late to be of any value, and for that reason the court should take jurisdiction. However, it is well settled that the Supreme Court has no equity power in election cases. (Halldow v Wykle, 68 Misc 2d 155 [Sup Ct, Wayne County 1971]; Matter of Kranis v Momerrat, supra.) In Halldow, the court noted: "Petitioners claim they are not requesting relief under section 330 but are asking here for a preliminary injunction in their action to permanently enjoin the election officials from certifying their opponents as the successful candidates. The court, however, has no equity powers in election cases (Schieffelin v. Komfort, 212 N. Y. 520). In the Schieffelin case the Court of Appeals stated (p. 535): 'It is the settled law in this state that *535 equity has no jurisdiction over contests of office even if the election is claimed to be void. Parties aggrieved are required to assert their rights in proceedings provided by statute or in actions at law.’ ” (68 Misc 2d, at 156.)
In addition, it should be pointed out that although the petitioner claims that any decision of the Election Board would be untimely, it is interesting to note that he does not allege that he contacted the Election Board to determine what the time frame would be to make any decision on his complaint.
The court has no jurisdiction to restrain the distribution of campaign literature. (Matter of Parise v Seidman, 21 AD2d 677 [2d Dept 1964].) The court is aware of one instance where a court did restrain the distribution of campaign literature (Rook v Skuse, 47 Misc 2d 715 [Sup Ct, Albany County 1965]), but that case involved misrepresentations in literature concerning a designation by the Albany County Republican Committee and endorsement by Republican organizations of other communities. The injunction granted in that case falls clearly within the authorization of the Supreme Court as set forth in article 16 of the Election Law and its predecessor statutes.
While at first blush it may appear that other misrepresentations are as significant as misrepresentations concerning political party endorsements, the Legislature has specifically provided for court intervention where such misrepresentations concern political parties.
With respect to the instant situation involving campaign literature, the language of the Appellate Division in Matter of Lisa v Board of Elections (54 AD2d 746 [2d Dept 1976], affd 40 NY2d 911) is more to the point: "[I]n the exercise of that [summary] jurisdiction [under the Election Law], the court possesses no inherent power and may, therefore, exercise only such power as the Legislature has conferred upon it * * * if petitioner’s contention is correct, every allegedly fraudulent campaign practice perpetrated during an election campaign could become the subject of review by the courts, thereby producing an unending series of charges and countercharges between the victors and the vanquished, which would not only greatly overburden our judicial system, but our electoral process as well. We believe that the courts should not become involved in the policing of campaign literature”. (54 AD2d, at 746-747 [emphasis added].)
Finally, the petitioner raises the constitutional issue of *536 freedom of speech under the First and Fourteenth Amendments to the US Constitution. His argument is not well founded. The Amendments in question concerning freedom of speech protect the rights of individuals in exercising that freedom. In this case, it is the respondents who have exercised their right to freedom of speech under the First and Fourteenth Amendments. The petitioner’s rights under the First and Fourteenth Amendments have not been infringed upon by the respondents. The case cited by the petitioner, Matter of Cahill v Public Serv. Commn. (113 AD2d 603 [3d Dept 1986]), is inapposite since the court in that case found that the petitioner had a clear cause of action setting forth constitutional violations.
The petitioner has also cited several cases in an effort to convince the court that the right to freedom of speech may be enjoined "When such conduct is in furtherance of a tortious or fraudulent scheme”. However, upon careful review of each of those cases, the court finds them to be without application to the case at bar. This court, even if it had the power to do so, would not interfere with protected constitutional rights except in the most grievous situations. Since the jurisdiction of the Supreme Court is specific and limited by article 16 of the Election Law, there is no inherent power to so interfere.
Although one may understand and even sympathize with the frustration a candidate may experience by the inability to obtain an immediate decision in the courts for perceived false and fraudulent statements by an opponent, the Legislature has provided an exclusive remedy which requires the candidate to exhaust his administrative remedies before invoking court intervention.
For all of the foregoing reasons, the petition must be dismissed.